```
1  JEFFREY AARON COHEN, SBN 186420
   LAW OFFICE OF JEFFREY A. COHEN
2  15338 Central Avenue
   Chino CA 91710
3  Telephone :    310-650-6015
   Email:         jac@cohen-lawfirm.com
4
   Attorney for plaintiff
5  NOCHER ENTERPRISES, INC.
```

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOCHER ENTERPRISES, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>AVENTUS OUTREACH, LLC, a Florida limited liability company; OLIVER DAWOUD, an individual; AVENTUS BIO LABS, INC., a Florida corporation; and AVENTUS HEALTH, LLC, a Florida limited liability company,<br><br>Defendants. | Case No.: 2:18-cv-3897 RSWL (JEMx)<br><br>**FIRST-AMENDED COMPLAINT** |

Plaintiff alleges:

## **PARTIES AND CAPACITIES**

1. At all times relevant hereto plaintiff NOCHER ENTERPISES, INC. ("plaintiff") is and was a California corporation doing business in the City of Los Angeles, California.

2. At all times relevant hereto defendant AVENTUS OUTREACH, LLC is and was a Florida limited liability company ("Aventus Outreach" or "defendant"), who sought plaintiff's products and services.

3. At all times relevant hereto defendant AVENTUS BIO LABS, INC. is and was a Florida corporation ("Bio Labs" or "defendant"), who sought plaintiff's products and services.

4. At all times relevant hereto defendant AVENTUS HEALTH, LLC is and was a Florida limited liability company ("Aventus Health" or "defendant"), who sought plaintiff's products and services.

5. Plaintiff is informed and believes that defendant OLIVER DAWOUD ("Dawoud" or "defendant") is, and at all times relevant hereto was, an individual and the principal/owner of Aventus Outreach.

6. Defendants Aventus Health, Aventus Outreach, Bio Labs and Dawoud are collectively referred to as the "Aventus Defendants". Plaintiff is informed and believes that at all times relevant hereto Dawoud was and is the agent and representative of all Aventus Defendants.

7. Plaintiff is further informed and believes that the Aventus Defendants were separately organized according to the type of provider-source and/or payor source, whether it was in-network or out-of-network (which will be subject to discovery). Nevertheless, at all times relevant hereto the defendants held themselves out as one and same entity acting in concert with each other vis-à-vis plaintiff for purposes of their business dealings. Plaintiff is informed and believes that the Aventus Defendants are alter egos of each other for the purposes of carrying deceit and injustices to plaintiff. At all times relevant hereto each of the Aventus Defendants acted under the banner and trade name of Aventus Biolabs a/k/a AventusBiolabs.com.

## JURISDICTION AND VENUE

8. This court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332 following defendants' removal of this action from State Court pursuant to 28 U.S.C. § 1441(a).

9. Plaintiff is a California corporation and has its primary base of business

here in California.  Plaintiff is a citizen of California.  Whereas, plaintiff is informed and believes that each of the Aventus Defendants are citizens of Florida.  In addition, plaintiff claim for compensatory damages is for $2,946,666.67, and its claim for punitive damages is for $3,000,000.00.  The amount in controversy therefore exceeds $75,000.00 and diversity jurisdiction is proper.

10. Furthermore, this Court is in the judicial district and division embracing the place of performance of the contract at issue and where the operative facts occurred (pleaded in detail below).  This is also the district and division where the State Court Action was brought.  For these reasons personal jurisdiction and venue lie in this district and division.

## MATERIAL FACTS AS TO ALL CAUSES OF ACTION

11. The Aventus Defendants typically avoided conducting business with California entities due to the perceived laws of the state.  However, defendants made an exception with Nocher Enterprises because of the anticipated large volume of business it expected to generate for the Aventus Entities—knowing full well that it was engaging a California business entity who had special relationships with California-based providers.

12. With this in mind, on or about April 19, 2017, the Aventus Defendants invited plaintiff to enroll its accounts with defendants for the sale and service of specimens as ordered by defendants for defendants' laboratories.   At that time defendants promised to pay plaintiff a reasonable amount of money for plaintiff's provided specimens based on defendants' collections.  Defendants promised to pay plaintiff 50% of net payment received (less 30% on hospital fees) and then 50% of the remainder; and from which defendant also deducted $150.00 per paid sample. Defendants promised to account for their collections in the form of, inter alia, summarized reports indicating the amount collected per claim, provider name, and claim date.  Defendants also were to provide plaintiff access to defendants' online

portal to verify collection and other data.  Plaintiff, in reliance on defendants' promises, started delivering the samples to defendants.

13.   Furthermore, at all times relevant hereto the Aventus Defendants knew that the primary and majority source of the specimens that plaintiff would provide, and did provide, to defendants were from California providers, including but not limited to providers such as hospitals, doctors, and rehabilitation (drug and treatment centers).

14.   For example, on or about May 25, 2017, defendant engaged in e-mail communications entitled "CA STATE CLIENTS - SPECIMEN ID ISSUES" and concluded with the statement, "I will be happy to keep you updated if I notice any other issues with respect to CA clients."

15.   To be sure, California was the primary business-source Aventus targeted when it engaged Nocher Enterprises, Inc. to provide the samples.  Indeed, the great majority (approximately 85%) of the providers from which plaintiff procured the thousands of samples for the Aventus Defendants were from California, to-wit, the following entities :

   a.  Pax House
   b.  Valley Restoration Center
   c.  Next Step Recovery
   d.  South Coast Counseling
   e.  Landmark Recovery
   f.  Crossroads Transitional
   g.  CA Prime Recovery
   h.  Fresh Start of CA Detox
   i.  Bridges to Life Detox
   j.  Forefront Beverly Hills
   k.  IMAC Medical Group
   l.  Resilient Care Center

  m. Rancho Milagro Recovery

  n. New Existence

  o. New Origins

  p. Pacific Pain Clinic

  q. Balboa Surgery Center/Pain Management Inc.

  r. Valley Detox

  s. Chandler Treatment

  t. Playa House; and

  u. Seacliff Recovery.

16. The Aventus Defendants, in turn, systematically delivered the necessary supplies and equipment for the samples directly to the California entities as indicated by the medical necessity forms.

17. As of August 2017, the defendants had paid plaintiff one hundred seventy thousand dollars ($170,000.00) for approximately 600 specimens. During that time frame defendants had been stalling plaintiff on further payments, and failed and refused to provide plaintiff the reports of the collections on the specimens. Defendants also denied plaintiff access to defendants' online portal to verify collection information.

18. In or around early November 2017 defendants, in response to plaintiff's repeated requests for payment and an accounting, provided plaintiff by e-mail an Excel spreadsheet that was purportedly the amount of collection defendants made on plaintiff's samples for September 2017 (entitled "Nocher Sept").

19. Upon review plaintiff learned that defendants had falsified the Nocher Sept spreadsheet as defendants' representatives had also simultaneously or nearly simultaneously sent the same spreadsheet (listing the same providers and samples) but bearing differing numerical collection and other data. Upon further inspection plaintiff learned that defendants had materially falsified the amounts collected as zero or nearly zero to justify not paying plaintiff any money for the samples,

1 whereas the truth was that defendants had collection substantial sums of money on the samples plaintiff provided.

20. Specifically and by way of example, throughout the reports identical claim ID numbers and claim dates were listed but have two drastically different reimbursements with no correlation. In some cases a $19,000 payment turned into 0 or $5,000 turned into $500[1]. In addition, based on plaintiff's independent investigations, there were many payments of twenty-thousand dollars ($20,000.00) gross per specimen paid to defendants that were never accounted for or paid to plaintiff. (Plaintiff has been unable to directly verify the amount from defendants due to defendants' falsification of reports, but which will be subject to discovery).

21. By that time it was apparent to plaintiff that defendants had no intention of paying for the unpaid 10,400 specimens and were lying to plaintiff.

22. Defendants also refused to make any further payments to plaintiff on the false grounds that defendants had already paid plaintiff and/or that plaintiff was not entitled to payment.

23. Plaintiff is informed that defendants have collected millions of dollars from the 10,400 specimens plaintiff provided and for which remain unpaid. Whereas, plaintiff has provided and furnished defendants approximately 11,000 specimens for which defendants have paid only for 600 specimens. Defendants owe plaintiff the balance due of $2,946,666.67.

**FIRST CAUSE OF ACTION FOR DECEIT/NEGLIGENT MISREPRESENTATION**

**(AGAINST ALL DEFENDANTS)**

24. Plaintiff incorporates herein the allegations of paragraphs 1-23.

25. In making the false representations to plaintiff concerning payment of a

---

[1] Disclosure of specific claim numbers and claims will be made subject to a HIPAA-compliant protective order.

reasonable fee, and in making the false representations of account in order to deny payment, defendants acted knowingly and without regard to the truth in dealing with plaintiff.  In so doing, defendants also acted without reasonable grounds to believe the truth of the alleged inability to pay plaintiff due to defendants having not been paid on the specimens.  Whereas, plaintiff was ignorant of defendants' nefarious intentions and action when sending further and thousands of specimens to defendants, and acted in justifiable reliance thereon in sending those specimens.

26. As a result thereof plaintiff has been damaged $2,946,666.67.

27. Defendants acted with oppression, fraud or malice in this regard for which plaintiff is entitled to an additional award of punitive damages in the amount of $3,000,000.00.

## SECOND CAUSE OF ACTION FOR BREACH OF IMPLIED CONTRACT
## (AGAINST ALL DEFENDANTS)

28. Plaintiff incorporates herein the allegations of paragraphs 1-27.

29. On or about April 19, 2017, plaintiff enrolled an account with defendants for the sale of specimens as ordered by defendants for defendants' laboratory.   At that time plaintiff and defendants entered into a contract.

30. As of August 2017 defendants had paid plaintiff one hundred seventy thousand dollars ($170,000.00) for approximately 600 specimens.  This established an average price/specimen of $283.33 that defendants promised to pay plaintiff.

31. Whereas, plaintiff has provided and furnished defendants approximately 11,000 specimens for which defendants have paid only for 600 specimens.  Defendants therefore owe plaintiff the balance due of $2,946,666.67 based on the foregoing arithmetic.

32. Defendants have breached the contract with plaintiff by failing and refusing to pay plaintiff for the 10,400 specimens, for which damages amount to $2,946,666.67.

## THIRD CAUSE OF ACTION FOR BREACH OF ORAL CONTRACT
## (AGAINST ALL DEFENDANTS)

33. Plaintiff incorporates herein the allegations of paragraphs 1-32.

34. On or about April 19, 2017, plaintiff enrolled an account with defendants for the sale of specimens as ordered by defendants for defendants' laboratory. At that time plaintiff and defendants entered into an oral contract: defendants promised to pay plaintiff 50% of net payment received (less 30% on hospital fees) and then 50% of the remainder; and from which defendant also deducted $150.00 per paid sample. Defendants promised to account for their collections in the form of, inter alia, summarized reports indicating the amount collected per claim, provider and claim date, and defendants' online portal. Plaintiff, in reliance on defendants' promises, started delivering the samples to defendants.

35. As of August 2017 defendants had paid plaintiff one hundred seventy thousand dollars ($170,000.00) for approximately 600 specimens.

36. Whereas, plaintiff has provided and furnished defendants approximately 11,000 specimens for which defendants have paid only for 600 specimens. Based on plaintiff's investigation, defendants have breached the contract with plaintiff by failing and refusing to pay plaintiff for the 10,400 specimens, for which damages amount to $2,946,666.67.

## FOURTH CAUSE OF ACTION FOR COMMON COUNTS
## (AGAINST ALL DEFENDANTS)

37. Plaintiff incorporates herein the allegations of paragraphs 1-36.

38. Plaintiff performed services and provided products/specimens to defendants for which defendants agreed to receive in exchange for payment therefor to plaintiff.

39. Plaintiff provided 600 specimens to defendants for which, as of August 2017, defendants had paid plaintiff one hundred seventy thousand dollars

($170,000.00).  This established an average price/specimen of $283.33 that is a reasonable price.

40.     Whereas, plaintiff has provided and furnished defendants approximately 10,400 specimens for which defendants have not paid but promised to pay.  Defendants owe plaintiff for said specimens the balance due of $2,946,666.67 in an action for *indebitatus assumpsit*.

41.     Alternatively and based upon these facts defendants owe plaintiff the sum of $2,946,666.67 in an action for *quantum valebant* for the reasonable value of the goods provided.

## FIFTH CAUSE OF ACTION FOR UNJUST ENRICHMENT
## (AGAINST ALL DEFENDANTS)

42.     Plaintiff incorporates herein the allegations of paragraphs 1-41.

43.     Defendants have been unjustly enriched by taking and receiving the 10,400 on a promise, express or implied, to pay therefor, and for which defendants made millions of dollars and refused to pay plaintiff anything.  As a remedy the Court should award plaintiff damages from defendants in an amount of $2,946,666.67.

## SIXTH CAUSE OF ACTION FOR AN ACCOUNTING
## (AGAINST ALL DEFENDANTS)

44.     Plaintiff incorporates herein the allegations of paragraphs 1-43.

45.     Plaintiff is entitled to an accounting from defendants of all monies and property defendants obtained and realized from the specimens plaintiff furnished to defendants, including without limitation all billing and invoices therefor, claims made and submitted to payors, EOBs, the responses thereto, and payments received by defendants.

///

///

WHEREFORE, plaintiff prays for judgment against defendants jointly and severally as follows:

a) for damages in the amount of $2,946,666.67;
b) for punitive damages on the first cause of action in the amount of $3,000,000.00;
c) for an accounting;
d) for cost of suit including attorneys fees as allowed by law;
e) for equitable and general relief; and
f) for such further relief as the Court deems proper.

Dated:   July 9, 2018         LAW OFFICE OF JEFFREY A. COHEN

                              By:    s/*JEFFREY A. COHEN*
                                     Jeffrey Aaron Cohen