MICHAEL R. MATTHIAS, SBN 57728
JOELLE A. BERLE, SBN 252532
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: mmatthias@bakerlaw.com
jberle@bakerlaw.com

MICHAEL S. VITALE (Admitted *Pro Hac Vice*)
**BAKER & HOSTETLER LLP**
2300 SunTrust Center
200 South Orange Avenue
P.O. Box 112
Orlando, FL 32802-0112
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: mvitale@bakerlaw.com

*Attorneys for Specially Appearing Defendants*
AVENTUS OUTREACH, LLC; OLIVER DAWOUD; AVENTUS BIO LABS, INC.; and AVENTUS HEALTH, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

NOCHER ENTERPRISES, INC., a California corporation,

Plaintiff,

v.

AVENTUS OUTREACH, LLC, a Florida limited liability company; OLIVER DAWOUD, an individual; and DOES 1-20, inclusive,

Defendants.

Case No.: 2:18-cv-3897 RSWL (JEMx)

Honorable Ronald S.W. Lew

**SPECIALLY APPEARING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION (FED. R. CIV. P. 12(b)(2))**

Date: September 25, 2018
Time: 10:00 a.m.
Courtroom: TBD

Action Filed: March 5, 2018

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that, on September 25, 2018 at 10:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Ronald S.W. Lew, at 350 W. 1st Street, Suite 4311, Los Angeles, CA 90012 (courtroom location to be noticed once assigned), Specially Appearing Defendants Aventus Outreach, LLC ("Outreach"), Oliver Dawoud, Aventus Bio Labs, Inc. sued herein as Aventus Biolabs aka Aventusbiolabs.com, and Aventus Health, LLC sued herein as Aventus Health, LLC aka Aventus Biolabs (collectively, "Defendants") shall, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 12(b)(2) for an Order dismissing the First Amended Complaint ("Complaint") of Nocher Enterprises, Inc. ("Nocher" or "Plaintiff") for Motion to Dismiss the First Amended Complaint ("Complaint") filed against them by Plaintiff for lack of personal jurisdiction.

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(2), on the grounds that Plaintiff has not adequately pled, nor is there any basis for, personal jurisdiction over Defendants in California.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Oliver Dawoud and Nagi Youssef, M.D., any Reply Memorandum that Defendants may file, the pleadings, records, and papers on file in this action, oral argument of counsel, and upon such other matters as may be presented to the Court prior to or at the hearing on the Motion.

/ / /

/ / /

This Motion is made following a conference of counsel pursuant to L.R. 7-3 on June 6, 2018, along with follow-up conferences on July 6, 20, and 25, 2018.

Dated: August 13, 2018

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: _/s/ Michael R. Matthias_______
Michael R. Matthias
Joelle A. Berle

*Attorneys for Specially Appearing Defendants*
AVENTUS OUTREACH, LLC; OLIVER DAWOUD; AVENTUS BIO LABS, INC.; and AVENTUS HEALTH, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .... 1
II. FACTUAL AND PROCEDURAL HISTORY .... 1
A. Summary of Facts Alleged in the Complaint .... 2
B. Facts Presented by Defendants .... 4
C. Procedural History .... 6
III. ARGUMENT .... 6
A. Legal Standard for Motion to Dismiss Under Rule 12(b)(2) .... 6
B. The Complaint Demonstrates No Prima Facie Case for Jurisdiction .... 8
C. There is No Basis for General Jurisdiction over Defendants .... 9
D. No Specific Jurisdiction Exists Over Any of the Defendants .... 12
IV. CONCLUSION .... 18

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alliance Data Sys. Corp. v. Blackstone Cap. Partners v. L.P.*,
963 A.2d 746 (Del. Ch. 2009) ........ 20

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
551 F.2d 784 (9th Cir. 1977) ........ 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 9

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ........ 16, 17

*Bancroft & Masters v. Augusta Nat'l Inc.*,
223 F.3d 1082 (9th Cir. 2000) ........ 12

*Bell Atlantic. v. Twombly*,
550 U.S. 544 (2007) ........ 9

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ........ 19

*Bristol-Myers. Matus v. Premium Nutraceuticals, LLC*,
715 F. App'x 662 (9th Cir. 2018) ........ 16, 17

*Bristol-Myers. Simmons Sporting Goods, Inc. v. Lawson*,
138 S. Ct. 237 (2017) ........ 16

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773, 198 L.Ed.2d 395 (2017) ........ 10, 15, 16, 17

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........ 10

*Cubbage v. Merchent*,
744 F.2d 665 (9th Cir.1984) ........ 12, 13, 14

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ........ *passim*

*Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*,
557 F.2d 1280 (9th Cir. 1977) ........ 9

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) .... 9

*Fields v. Sedgwick Associated Risks, Ltd.*,
796 F.2d 299 (9th Cir. 1986) .... 12, 13, 14

*Gates Learjet Corp. v. Jensen*,
743 F.2d 1325 (9th Cir.1984) .... 13

*Glencore Grain Rotterdam v. Shivnath Rai Harnarain*,
284 F.3d 1114 (9th Cir. 2002) .... 12

*Gray & Co. v. Firstenberg Mach.*,
913 F.2d 758 (9th Cir. 1990) .... 19

*Helicopteros Nacionales de Colombia v. Hall*,
466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) .... 12

*International Shoe Co. v. Washington*,
326 U.S. 310 (1945) .... 10, 12

*Monkton Ins. Servs., Ltd. v. Ritter*,
768 F.3d 429 (5th Cir. 2014) .... 13

*Morrill v. Scott Fin. Corp.*,
873 F.3d 1136 (9th Cir. 2017) .... 10

*Murco Wall Prod., Inc. v. Galier*,
138 S. Ct. 982 (2018) .... 16

*Peterson v. Kennedy*,
771 F.2d 1244 (9th Cir. 1985) .... 18

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) .... 20

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .... 9

*Scott v. Breeland*,
792 F.2d 925 (9th Cir. 1986) .... 9

*Slepian v. Guerin*,
172 F.3d 58 (9th Cir. 1999) .... 18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Terracom v. Valley Nat. Bank*,
49 F.3d 555 (9th Cir. 1995) .......... 20

*Tuazon v. R.J. Reynolds Tobacco Co.*,
433 F.3d 1163 (9th Cir. 2006) .......... 12

*U.S. v. Bestfoods*,
524 U.S. 51 (1998) .......... 20

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 18, 20

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) .......... 14, 15, 17, 18

**Statutes**

Cal. *Code Civ. Proc.* § 410.10 .......... 10

**Rules**

Rule 12 .......... 3

Rule 12(b)(2) .......... 3, 9

Rule 12(b)(6) .......... 3, 18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a simple breach of contract action between a California plaintiff and four Florida defendants regarding a purported "contract" which, if it was formed, was negotiated and formed in Florida, and should be litigated in the State of Florida. All of the Defendants are foreign defendants to this State. In an effort to sidestep multiple jurisdictional and venue issues,[1] Nocher attempts to assert a handful of false tort claims against the Defendants, lumping all of them together as bad actors without any facts to support that any of the Defendants engaged in wrongdoing such that they should be haled into California to litigate this dispute. None of the Defendants maintain a place of business, have employees, or regularly conduct business in the State of California. The Defendants' contacts with California through the nature of their business – testing medical specimens from all over the United States at their Florida laboratories – is no more significant than their sparse connection to most other states from which they receive specimens for testing. Moreover, such activity is at best tangentially relevant to this payment dispute. The vague allegations of misconduct in Plaintiff's First Amended Complaint, ("Complaint") confirm that the alleged actions giving rise to Plaintiff's claims occurred outside of California. Accordingly, Plaintiff's claims should be dismissed for lack of personal jurisdiction over the Defendants.

## II. FACTUAL AND PROCEDURAL HISTORY

The facts gleaned from the Complaint do not demonstrate the basis for personal jurisdiction over any of the Defendants. However, even if they did, the facts

[1] For these reasons, simultaneously with the foregoing Motion to Dismiss under Rule 12(b)(2), Defendants have filed a motion to dismiss this action for failure to state a cause of action under Rule 12(b)(6), as they are required to do by Rule 12. Defendants request that the Court consider their jurisdictional challenge before the Motion to Dismiss, as this action should have been brought in the State of Florida. Defendants also reserve their right to move to transfer venue to a federal court in the State of Florida within a "reasonable time" of learning of the facts which would support such a transfer. Defendants' investigation into this issue is ongoing.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

submitted by Defendants in support of this Motion demonstrate that Nocher cannot meet its burden of demonstrating that jurisdiction is proper in California.

**A. Summary of Facts Alleged in the Complaint**

In its Complaint, Nocher alleges that it entered into a purported oral agreement in April of 2017 with the Defendants regarding the testing of medical specimens. (Dkt. No. 13 at ¶ 12.) These Defendants allegedly agreed to pay Nocher a "reasonable amount of money" for specimens Nocher provided to Defendants for testing. (*Id.*) Nocher began providing specimens to one or more of the Defendants. (*Id.*) By September of 2017, Nocher alleges that one or more unidentified Defendants made unidentified misrepresentations to Nocher about the processing and payment to Nocher of further monies Nocher believes it was owed. (*Id.* at ¶¶ 17-18.) An unidentified group of "defendants" also allegedly blocked Nocher's access to an online portal and sent Nocher a purportedly falsified spreadsheet in furtherance of an alleged scheme not to pay Nocher monies it was owed. (*Id.* at ¶¶ 17, 19-20).

For only four months of work, Nocher was paid $170,000.00 by Defendants. (*Id.* at ¶ 17.) Nocher claims that these payments were only meant to compensate Nocher for 600 of the 11,000 specimens it allegedly provided to Defendants. (*Id.* at ¶¶ 17, 23.) Thus, Nocher claims that Defendants failed to pay it for 10,400 specimens it purportedly sent to Defendants for testing. (*Id.*) The Complaint states that, when Nocher demanded further payments, Defendants' told Nocher that they had already paid Nocher for all of its services and that it was not entitled to further payment. (*Id.* at ¶ 22.) Nowhere in the Complaint does Nocher allege that the amount of money it was paid was "unreasonable" or outside of the fair market value for the services provided. (*See id.* at pp. 1-3.) However, based on its purported "arithmetic," Nocher claims that it is owed over $283.33 per sample, and therefore is entitled to almost $2.95 million in actual damages, and $3 million in punitive damages. (*Id.* at ¶¶ 23, 26-27, 30.) The Complaint is inherently contradictory in that one the one hand Plaintiff alleges that unnamed "defendants" promised to pay 50% of net payment

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

received, minus hospital fees, for every sample, and, on the other hand also alleges that payment should be a flat amount of $283.33 per sample. (*E.g.*, *id*. at ¶¶ 9, 12, 30-32). These directly contradictory averments are incorporated into all subsequent counts of the Complaint. (*Id*. at pp. 6-9).

Based on only these facts, Nocher sues all four Defendants for (1) Negligent Misrepresentation, (2) Breach of Implied Contract, (3) Breach of Oral Contract, (4) Common Counts, (5) Unjust Enrichment, and (6) Accounting. (*See generally id*.) None of the factual allegations or respective counts identify which of the four Defendants engaged in the allegedly wrongful conduct. All claims are lumped together against all "defendants". (*Id*.)

It is important for the Court to note not only what is in the Complaint, but what is missing. Nocher alleges few facts to support that jurisdiction is proper in the State of California over the four Florida defendants. (*See* Dkt. No. 13. at pp. 1-3.) Nocher fails to allege any facts to support where the purported oral contract was made, or where the alleged misrepresentations about processing and payment were made. Nocher does not allege that any of the specimen testing was performed in California, that any agreement was negotiated or formed in California, or that any payments were issued in California. In fact, the Complaint admits that all Defendants are Florida entities, and that Nocher furnished all of the specimens to "defendants" for testing at their laboratories, which are located in Florida. (*See id*. at ¶¶ 2-6, 12.) The only contact with California that the Complaint alleges is that unidentified "defendants" sent testing kits to California so that Nocher's medical provider clients could send their patients' medical samples to Defendants' laboratory, and that, therefore, Defendants tested specimens from California providers. In an even more attenuated connection, Nocher alleges that an unnamed "defendant" sent an email acknowledging that the samples came from "CA clients." (*Id*. at ¶¶ 13-16). It is important to note that nowhere in the Complaint does Nocher take issue with the quality of the testing performed by Defendants, but only that Nocher was not paid

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

what it arbitrarily thinks it should be paid, and that Defendants allegedly misrepresented their ability to pay and the amount owed for the specimens.

**B. <u>Facts Presented by Defendants</u>**

Nocher alleges that California "embrac[es]the place of performance of the contract at issue," (Dkt. No. 13 at ¶ 10), but this allegation is both legally meaningless and entirely false. None of the four Defendants are California residents; none of the Defendants maintain a place of business, have employees, or regularly conduct business in the State of California; the alleged agreement was not negotiated or formed in California; none of the laboratory specimen testing was performed in California; and payment for the testing was not issued in California.

Defendant Aventus Bio Labs, Inc. ("Bio Labs") is a dissolved corporation which has never done business of any kind, let alone in the State of California. (Declaration of Nagi Youssef, M.D. ("Youssef Decl."), ¶¶ 5-7). In addition, Bio Labs is no longer an active company and there was no basis to sue it in this lawsuit. (Youssef Decl., ¶ 3, 11).

Defendant Oliver Dawoud is an individual and resident of the State of Florida who has never owned a business in the State of California. (Declaration of Oliver Dawoud ("Dawoud Decl."), ¶¶ 4, 37). He does not own any property in California, does not engage in any business activity in California, and has little, if any, contact with the State. (Dawoud Decl., ¶¶ 35, 39). All of his alleged actions in this case were performed on behalf of Outreach, and there is no basis to sue him individually, particularly in a State where he does not reside. (Dawoud Decl., ¶ 33).

Defendants Aventus Health, LLC ("Health") and Aventus Outreach, LLC ("Outreach") are Florida limited liability companies that each have their principal place of business in Florida. (Youssef Decl., ¶ 12; Dawoud Decl., ¶ 3). At all times material to the facts giving rise to this lawsuit, all of the members of both entities





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

were Florida citizens.[2] (Youssef Decl., ¶ 13; Dawoud Decl., ¶ 4). Outreach is the only entity that entered into negotiations with Nocher, and Health performed some of the testing of the medical specimens which Nocher arranged to be sent to Florida for testing. (Dawoud Decl., ¶¶ 18-21; Youssef Decl., ¶ 22). Neither Health nor Outreach own property or lease space in California, advertise in California, operate a testing laboratory in California, or regularly conduct business in the State. (Youssef Decl., ¶¶ 16, 18, 21-23; Dawoud Decl., ¶¶ 9-10, 12, 22-23). In addition, neither Health nor Outreach currently conduct any business in California. (Youssef Decl., ¶ 16; Dawoud Decl., ¶ 9).

During the course of the parties' relationship, Nocher attended three meetings with representatives of Outreach in the State of Florida. (Dawoud Decl., ¶ 20). No meetings were held in California. (*Id.*) While Defendants vigorously dispute the allegations of the Complaint, all of the alleged statements attributed to Defendants, if they took place, originated out of the State of Florida. (Dawoud Decl., ¶ 20). Likewise, if any agreement or contract was made between the parties, it was made in Florida, resulting from the meetings and negotiations that took place in Florida. (Dawoud Decl., ¶ 18). In addition, all of the testing of the specimens took place in Florida, not California laboratories, with the exception of some samples that were sent to a reference laboratory in Georgia. (Dawoud Decl., ¶¶ 22-23). Importantly, all of the specimens tested by Defendants were stored in Florida, with the results stored and uploaded onto Florida servers where they could be accessed online. (Dawoud Decl., ¶¶ 26, 28; Youssef Decl., ¶¶ 24, 26). All payments to Nocher were also transmitted from Florida accounts and sent out of the State of Florida to Nocher. (Dawoud Decl., ¶ 30).

---

[2] Health and Outreach are in the process of undergoing corporate reorganizations, which were recently commenced and were not underway when the facts giving rise to the lawsuit occurred, nor when this lawsuit was filed.





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**C. Procedural History**

On March 5, 2018, Plaintiff filed the State Court Action against Outreach, Dawoud and Does 1-20, inclusive. (Dkt. No. 1.) Plaintiff filed an amendment to its complaint in state court on March 21, 2018, naming Bio Labs as Defendant Doe 1. (*Id.*) Plaintiff filed a second amendment to its complaint in state court on April 26, 2018, naming Health as Defendant Doe 2. (*Id.*) Both of these amendments were filed before any of the Defendants had appeared in the matter.

In May of 2018, Defendants removed this action to this Court by filing a timely Notice of Removal. (Dkt. No. 1.) After a good faith conference regarding Defendants' prospective Motion to Dismiss the initial complaint, Nocher amended its complaint to purportedly clarify the causes of action against Defendants and add facts suggesting why jurisdiction is proper in California. As the operative Complaint (Dkt. No. 13) still fails to meet Nocher's burden to establish jurisdiction over any of the Defendants, dismissal for lack of personal jurisdiction over all Defendants is warranted.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## III. ARGUMENT

**A. Legal Standard for Motion to Dismiss Under Rule 12(b)(2)**

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004). When determining whether a plaintiff can meet its burden of demonstrating that jurisdiction is proper, a court must first determine whether the plaintiff's complaint makes a *prima facie* showing of *in personam* jurisdiction over each defendant. *E.g., Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc*., 551 F.2d 784, 787 (9th Cir. 1977). In determining whether plaintiff has made a *prima facie* case for personal jurisdiction, the court examines the factual allegations in the complaint supporting jurisdiction, which must be taken as true. *See, e.g., Doe v. Unocal Corp*., 248 F.3d 915, 922 (9th Cir. 2001)). However, only the "well-pleaded factual

allegations" of plaintiff's complaint, as distinguished from "mere conclusory statements," must be accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atlantic. v. Twombly*, 550 U.S. 544, 555 (2007)).

Defendants may also make a factual challenge to the exercise of jurisdiction over them by presenting factual evidence which demonstrates the absence of jurisdiction over them. When a defendant chooses to do so, the burden still remains on the plaintiff to establish that personal jurisdiction is proper over each defendant. *Amba*, 551 U.S. at 787. To satisfy this burden when counter-evidence is presented, "the plaintiff cannot 'simply rest on the bare allegations of its complaint.'" *Id.* (citation omitted). Rather, where the defendant has submitted evidence controverting the plaintiff's allegations, the plaintiff must "'come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted); *see also Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) ("we may not assume the truth of allegations in a pleading which are contradicted by affidavit.").

Under California's long-arm statute, personal jurisdiction over a nonresident defendant may be general or specific. Cal. *Code Civ. Proc.* § 410.10. Yet, federal courts sitting in California may only exercise personal jurisdiction if doing so "comports with the limits imposed by federal due process." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) (citing Cal. *Code Civ. Proc.* § 410.10). The Due Process Clause of the U.S. Constitution protects non-residents from being bound by judgments of a forum with which they have no meaningful contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Due process, therefore, requires that a non-resident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A court may only assert personal jurisdiction over a defendant based on "minimum contacts" under one of two theories. First, where a defendant's contacts

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

are so "continuous and systematic" as to render it essentially at home in the forum state, a court is said to have general jurisdiction over the defendant. *Daimler*, 134 S. Ct. at 761. Second, if a defendant's contacts are not sufficiently "continuous and systematic" to exercise general jurisdiction, a defendant may still be subject to specific jurisdiction, but only with respect to claims that relate to or arise out of the defendant's alleged activities in the forum. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780, 198 L.Ed.2d 395 (2017). Nocher has not alleged – nor can it establish – facts sufficient to exercise personal jurisdiction over Defendants under either theory. It is undoubtedly Nocher's burden to plead and demonstrate that jurisdiction is appropriate here. *See, e.g., Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017). Nocher has not done so.

### B. The Complaint Demonstrates No Prima Facie Case for Jurisdiction

It is undoubtedly Nocher's burden to plead that jurisdiction is appropriate over the Defendants, *E.g., Morrill*, 873 F.3d at 1141. As Nocher has failed to plead jurisdiction over any of the Defendants in its Complaint, it has not met its burden to establish that the exercise of jurisdiction over any of the Defendants is proper.

Here, while Nocher makes a general allegation that jurisdiction is proper in the State of California, its Complaint is deficient in demonstrating that California has jurisdiction over the four Florida Defendants. (*See* Compl. at pp. 1-3). The conclusory allegation that California is the district "embracing the place of performance … and where the operative facts occurred," is not supported by any of the later-alleged facts, which are irrelevant to the jurisdictional inquiry. (*See* Dkt. No. 13, ¶ 10). Specifically, Nocher fails to allege where the purported oral contract between the parties was made, or where the alleged misrepresentations about processing and payment were made. (*Id.* at pp. 4-5.) While Nocher alleges that unnamed Defendants sent testing kits to California, such a fact, even if true, is completely irrelevant. This is not a case where Nocher is alleging negligent or

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

fraudulent specimen testing, or seeking contribution for medical malpractice. This is a case where Nocher is alleging breach of a contract for payment. Furthermore, even if the situs of testing were relevant, Nocher does not allege that any of the specimens were sent to Defendants in California, or that any of the testing was done in California. As Defendants makes clear below, this is because it cannot do so.

The Complaint admits that all Defendants are Florida entities, and that Nocher furnished all of the specimens to "defendants" for testing at their laboratories. (*Id*. at ¶ 12). Hence, the "facts" averred by Nocher do not support the conclusory statement that jurisdiction is proper over any of the Aventus entities in California.

This is especially true for individual Defendant Dawoud. The Complaint alleges no specific actions by Dawoud that would demonstrate that jurisdiction over Dawoud is proper in California. In fact, no actions whatsoever are attributed to Dawoud in the Complaint, and Nocher does not even attempt to set forth facts showing that jurisdiction is proper over him.

For these reasons, the Court should find that Nocher has failed to make a *prima facie* case for jurisdiction, and dismiss this action against all Defendants, particularly Dawoud.

**C. <u>There is No Basis for General Jurisdiction over Defendants</u>**

Should the Court even need to examine the evidence submitted by Defendants, which Defendants do not contend, such evidence conclusively demonstrates that Nocher cannot meet its burden to show that California has any basis to assert general jurisdiction over any of the Defendants.

General jurisdiction over a nonresident defendant exists "only where 'continuous corporate operations within a state are thought so substantial and of such a nature as to justify suit against the defendant on causes of action arising from dealings entirely distinct from those activities.'" *Tuazon v. R.J. Reynolds Tobacco Co*., 433 F.3d 1163, 1169 (9th Cir. 2006) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)) (internal brackets omitted). To obtain general jurisdiction,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"contacts with a state must 'approximate physical presence.'" *Id*. (quoting *Bancroft & Masters v. Augusta Nat'l Inc*., 223 F.3d 1082, 1086 (9th Cir. 2000)). "Put another way, a defendant must not only step through the door, it must also 'sit down and make itself at home.'" *Id*. (quoting *Glencore Grain Rotterdam v. Shivnath Rai Harnarain*, 284 F.3d 1114, 1125 (9th Cir. 2002)).

As the Ninth Circuit Court of Appeals has recognized, "[t]his is a fairly high standard in practice." *Fields v. Sedgwick Associated Risks, Ltd*., 796 F.2d 299, 301 (9th Cir. 1986). General jurisdiction does not exist in a forum merely because a foreign corporation sent one of its officers to negotiate a contract, sent personnel to train there, accepted checks drawn on a local bank, and purchased equipment from an in-state firm.[3] *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 1837, 80 L.Ed.2d 404 (1984). In *Cubbage v. Merchent*, 744 F.2d 665 (9th Cir.1984), the Ninth Circuit held that California did not have general jurisdiction over doctors residing in Arizona where they saw a significant number of California residents as patients, used the California state health insurance system for claims, and were listed in a California telephone directory. *Id.* at 667-68. A significant factor in the analysis is whether the defendants have a place of business in the state. *Fields*, 796 F.2d at 301 (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330–31 (9th Cir.1984)).

Further, the Supreme Court of the United States has stated that there exist "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760 (internal citation omitted). In *Daimler*, the Court held that the "paradigm all-purpose forums" in which a corporation will be considered "at home," and subject to general jurisdiction, are limited to the "corporation's place of incorporation and principal place of business." *Id*. The Court cautioned that only in an "exceptional case" will "a corporation's

[3] It is important to note that it is not even alleged, let alone can Nocher demonstrate, that any of the Defendants engaged in any of these three activities in this case.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

operations in a forum other than its formal place of incorporation or principal place of business … be so substantial and of such a nature as to render the corporation at home in that State." *Id*. at 761 n. 19 (emphasis added); *see also Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (observing that after Daimler, "it is … incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.") (emphasis added).

In this case, it is clear that neither of the two bases for general jurisdiction recognized by the Supreme Court are present here for any of the four (4) defendants, and Nocher's attempt to demonstrate general jurisdiction in its Complaint falls far short of this standard. Courts only exercise general jurisdiction over corporations whose contacts with the forum state "are so constant and pervasive as to render it essentially at home in the forum state." *Daimler*, 134 S.Ct. at 751 (internal quotes and brackets omitted). That means "for exercising general jurisdiction, the corporate defendant is incorporated or has its principal place of business in the forum state." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (affirming no general jurisdiction in California over an international corporation headquartered and incorporated in Japan, discussing how *Daimler* abrogated Ninth Circuit jurisprudence on general jurisdiction).

Here, Outreach, Health, and Bio Labs' principal place of business is in Seminole County, Florida, and Defendants are all organized and reside in Florida, not California. (Youssef Decl., ¶¶ 4, 12; Dawoud Decl., ¶ 3). Since *Daimler*, that should be the end of the general jurisdiction analysis. However, even if the Court were to go further, none of the Defendants' contact with California are enough to assert general jurisdiction. Defendant Dawoud is not a resident of California, owns no property there, engages in no business activity there, does not advertise in California, and has very limited contact with the state. (Dawoud Decl., ¶¶ 12, 35-36, 39). Corporate Defendant Bio Labs has never had any contact with California whatsoever and has never conducted business anywhere, let alone in

California. (Youssef Decl., ¶¶ 7-8). Defendants Health and Outreach have no place of business in California, no members who are citizens of the State, were not organized under the laws of the State, and own no property there. (Youssef Decl., ¶¶ 12-14, 18; Dawoud Decl., ¶¶ 3-4, 6-7, 10).

Further, the mere existence of an alleged contract is not enough to confer general jurisdiction over a non-resident defendant. *See, e.g., Fields*, 796 F.2d at 302. Likewise, the fact that Health and/or Outreach allegedly sent testing kits into California so that California providers could provide medical samples to their patients for testing is of no moment to this inquiry. In *Cubbage*, the physicians at issue did far more than any of the Defendants in this action, advertising in California for patients, seeing California patients, and using the California state insurance system to submit and be paid for claims, and the court held that California still did not have jurisdiction. *Cubbage*, 744 F.2d at 667-68. Here, none of the Aventus entities conducted any advertising in California, or had any direct contact with the patients at issue. In addition, Defendants issued all payments to Nocher from Florida. Likewise, all meetings with Nocher took place at Defendants' offices in Florida. (*See* Dawoud Decl., ¶ 20). Thus, because Nocher cannot establish that Defendants have anything remotely approaching a physical presence in the State of California, there is no basis to conclude that exercising general jurisdiction over any of the Defendants is proper in this case.

**D. <u>No Specific Jurisdiction Exists Over Any of the Defendants.</u>**

To establish "specific jurisdiction" over a non-resident defendant, a plaintiff must demonstrate that: (1) the defendant either "purposefully direct[ed]" its activities or "purposefully avail[ed]" itself of the benefits afforded by the forum's laws; (2) the claim "arises out of or relates to the defendant's forum-related activities"; <u>and</u> (3) the exercise of jurisdiction "comports with fair play and substantial justice, *i.e.*, it is reasonable." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (citation omitted); *see also Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 ("In

order for a court to exercise specific jurisdiction … there must be an 'affiliation between the forum and the underlying controversy, principally [an] activity or an occurrence that takes place in the forum State. When there is no such connection, specific jurisdiction is lacking ….") (citation omitted). Additionally, the requisite "minimum contacts" must be "with the forum State itself, not ... with persons who reside there." *Williams*, 851 F.3d at 1023.

Like *Daimler*, which meaningfully narrowed general jurisdiction over foreign corporations, *Bristol-Myers* similarly and meaningfully narrowed specific jurisdiction over foreign corporations. As Nocher's Complaint does not account for changes in the law since *Daimler*, so too does Nocher fail to account for changes in the law since *Bristol-Myers*. In *Bristol-Myers*, plaintiffs sued a Delaware corporation headquartered in New York for products liability in California. *Id.* Although the underlying product was sold in California, and the corporation engaged in other California business, the corporation "did not develop, create a marketing strategy for, manufacture, label, package, or work on the regulatory approval for [the product] in [California]." 137 S. Ct. at 1775. Reversing the California Supreme Court's decision to exercise specific jurisdiction over non-Californians' product liability claims against the corporation, the Supreme Court held "the fact that [the corporation] contracted with a California distributor is not enough to establish personal jurisdiction in the State [of California]." *Id.* at 1783.[4]

Continuing along these lines, at least twice already, the Supreme Court has summarily vacated judgment and remanded exercises of specific jurisdiction, citing *Bristol-Myers*. *Simmons Sporting Goods, Inc. v. Lawson*, 138 S. Ct. 237 (2017) (plaintiff Arkansas retail sporting goods store patron sued Louisiana retailer over

[4] The dissenting opinion in *Bristol-Myers* similarly confirms that the Supreme Court has narrowed the exercise of specific jurisdiction when compared to older cases. In her dissent, Justice Sotomayor reflected, "Three years ago, the [Supreme] Court imposed substantial curbs on the exercise of general jurisdiction in its decision in *Daimler* []. Today, the Court takes its first step toward a similar contraction of specific jurisdiction." *Id.* at 1783.

personal injuries suffered falling at the store); *Murco Wall Prod., Inc. v. Galier*, 138 S. Ct. 982 (2018) (plaintiff Oklahoma resident sued defendant Texas drywall supplier over injuries suffered from asbestos in defendant's Oklahoma products). The Ninth Circuit, in turn, has affirmed the narrowed application of specific jurisdiction, citing *Bristol-Myers*. *Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018) (affirming dismissal of California consumer's product liability claim for lack of specific jurisdiction against Georgia manufacturer; "false advertising" and selling products in California were not sufficient purposeful availment or "forum-related activities"); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) (affirming dismissal of California corporation's copyright claims against foreign wholesaler and its foreign subsidiary, even though 55 out of 343 recipients of the newsletter containing the disputed copyrighted logos had companies in California).

Nocher's Complaint in this case demonstrates that its claims fall woefully short of establishing any of the three elements in the Ninth Circuit's test for specific jurisdiction, particularly when properly narrowed after the Supreme Court's guidance in *Bristol-Myers*. Addressing the first prong of the specific jurisdiction analysis, Nocher cannot demonstrate any purposeful availment of California by Defendants. At most, Defendants entered into a business relationship with a resident of California, by engaging in negotiations, meetings, and business activities in the State of Florida. Under *Williams*, this is insufficient, as mere contacts with residents of the forum state do not cross the jurisdictional threshold. *Williams*, 851 F.3d at 1023. Nocher will undoubtedly argue that the (alleged) fact that an unidentified Aventus entity or entities sent testing samples to California businesses establishes "purposeful availment" of California. This is not the case. First, it was Nocher, or the physicians associated with Nocher, who contracted with these patients for testing, not Defendants. Outreach tests biological samples from patients all over the United States at its laboratories in Florida. The fact that Nocher purposefully avails itself of

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

doing business in California is not sufficient to transfer its contacts with the forum state onto Defendants merely because of an alleged business relationship (formed in Florida) between the two companies who are parties to this case. Likewise, the mere fact that one or two of the Defendants' activities in Florida affect residents in California is insufficient to show purposeful availment, as explained by the courts in *Bristol-Myers*, *Matus*, and *Axiom*. Finally, as explained in further detail below, there is an insufficient nexus between Defendants' activities and the claims at issue in this lawsuit.

Turning to the second prong, Nocher's claims do not arise out of Defendants' purported forum-related activities. This is not a lawsuit alleging negligent or fraudulent testing of patient samples, medical malpractice, or violations of patient confidentiality. Nocher is merely alleging that Defendants failed to adequately pay Nocher a proper fee for the samples it referred to one or two of the Defendants, and for which one or two of the Defendants purportedly were paid. Nocher further alleges that unnamed "defendants" lied to Nocher about repayment.[5] The alleged agreement is that Nocher would recommend that Defendants' Florida laboratories perform services for physicians around the country, and that if these physicians agreed to use Defendants for such testing, Nocher would be paid some type of fee. As such, the fact that *some* samples were drawn in California is completely irrelevant. In light of the alleged agreement between the parties – essentially seeking payment for referrals from Nocher's physicians – Defendants could be manufacturing "widgets," testing medical samples, or sending newsletters for purposes of this analysis. The relationship between the defendant and the forum state "must arise out of contacts that the 'defendant [itself]' creates with the forum State," not connections that the <u>plaintiff</u> has made with the forum state. *Williams*, 851 F.3d at 1023. "We have

---

[5] For the reasons stated in Aventus' Motion to Dismiss under Rule 12(b)(6), however, Nocher has no claim for negligent misrepresentation, as the alleged misrepresentation is barred by the economic loss rule and is merely a disguised claim for fraudulent breach of contract. (*See* Defendants Motion to Dismiss First Amended Complaint for Failure to State a Cause of Action, at pp. 8-11).

consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Finally, even if sending testing samples and allegedly dishonest emails into California about repayment were relevant, which they are not, this argument has been rejected by the Ninth Circuit as insufficient to confer jurisdiction over a non-resident defendant. The Ninth Circuit has made clear that, ordinarily, "use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state." *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985); *see also Slepian v. Guerin*, 172 F.3d 58 (9th Cir. 1999) (plaintiff's "use of phone, fax, and electronic mail to perform some of her job duties from home does not establish that [employer] conducted sufficient activities in the forum" to create specific jurisdiction); *Gray & Co. v. Firstenberg Mach.*, 913 F.2d 758, 760–61 (9th Cir. 1990) (similar).

The real issue should be where the contract between one or more of the Defendants and Nocher was formed and performed. Of course, the mere fact that the parties entered into an alleged contract is insufficient to confer jurisdiction over this case. "[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008). Turning to the facts about where the alleged payment agreement between the *actual parties to this case* was negotiated, discussed, and performed – all of these activities occurred in Florida. Nocher availed himself of Florida as a forum by traveling to Florida to introduce himself to Defendants and "pitch" Nocher as a source of revenue for Defendants' testing laboratories. (Dawoud Decl. at ¶ 20). Nocher agreed to have testing samples sent to Outreach in Florida to be tested, interpreted, and results stored by Outreach and/or Health in exchange for some amorphous payment or fee. (Dawoud Decl., ¶¶ 26, 28; Youssef Decl., ¶¶ 24, 26). Outreach received testing

samples in Florida, performed testing in Florida,[6] uploaded test results in Florida, kept records of the amount of tests it performed in Florida, and transmitted payment out of its Florida bank accounts. (Dawoud Decl., ¶ 28, 30; Youssef Decl., ¶¶ 24, 26). Defendants Bio Labs and Dawoud performed none of this work and have no connection to this dispute. (*See* Youssef Decl., ¶¶ 5-7, 11; Dawoud Decl., ¶¶ 4, 37.) Thus, Defendants really have no relevant forum-related activities, and the few activities that Outreach and/or Health have that reach into California are merely tangential to the underlying dispute and irrelevant for the jurisdictional inquiry.

Finally, it would offend notions of fair play and substantial justice to hale Defendants into Court in California for this primarily Florida-related dispute. Due process requires that a defendant be haled into court in a forum state based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the forum state. *Walden v. Fiore*, 571 U.S. 277, 286 (2014).

With even less contact with the State of California than the other Defendants, there is clearly no specific jurisdiction over Defendants Bio Labs or Dawoud as neither of them have had any relevant contact with California, do not engage in specimen testing, and never were parties to any agreement with Nocher. Simply put, it would violate the due process clause for either of these Defendants to remain in this lawsuit any longer.[7]

---

[6] For some samples, Outreach arranged for a reference lab in Georgia to perform some of the testing. (Dawoud Decl., ¶¶ 22-23.)

[7] Likewise, any attempt by Nocher to rely on its conclusory, unsupported, and false accusation of alter ego liability cannot stand. It is well-established that "the existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza v. Nike, Inc*., 793 F.3d 1059, 1070 (9th Cir. 2015). "It is a general principle of corporate law deeply ingrained in our legal system that a corporation is not liable for the acts of its subsidiaries." *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998). The law typically "respects corporate formalities … recognizing that the wealth-generating potential of corporate and other limited liability entities would be stymied if it did otherwise." *Alliance Data Sys. Corp. v. Blackstone Cap. Partners v. L.P.*, 963 A.2d 746, 769 (Del. Ch. 2009).





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Likewise, it would offend fair play and substantial justice for this Court to exercise jurisdiction over Outreach and Health, in addition to Bio Labs and Dawoud. All of the Defendants are Florida residents that do not maintain places of business in California. Forcing foreign defendants to travel thousands of miles to defend themselves in a state in which they cannot reasonably have foreseen being sued would be unjust and unfairly burdensome. *See Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995) ("the law of personal jurisdiction is asymmetrical and is primarily concerned with the defendant's burden."). Proceeding in California also would be inefficient, as many individuals that Defendants would call as trial witnesses, and the documents they would offer into evidence, would be coming from out-of-state. *See Terracom*, 49 F.3d at 561 (noting that a forum's efficiency is to be evaluated by looking at where witnesses and evidence are located). Finally, should the Court determine it does not have personal jurisdiction over Defendants, Nocher still would have an alternative forum for its claims – in Florida. In summary, considerations of reasonableness weigh against this State asserting specific jurisdiction over Defendants. Nocher fails to satisfy any of the three-part specific jurisdiction test, much less all parts as required.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully move this Court to dismiss this action with prejudice against all Defendants for lack of personal jurisdiction, and award Defendants their costs of suit.

Dated: August 13, 2018

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: /s/ *Michael R. Matthias*
Michael R. Matthias
Joelle A. Berle

*Attorneys for Specially Appearing Defendants*
AVENTUS OUTREACH, LLC; OLIVER DAWOUD; AVENTUS BIO LABS, INC.; and AVENTUS HEALTH, LLC