MICHAEL R. MATTHIAS, SBN 57728
JOELLE A. BERLE, SBN 252532
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: mmatthias@bakerlaw.com
jberle@bakerlaw.com

MICHAEL S. VITALE (Admitted *Pro Hac Vice*)
**BAKER & HOSTETLER LLP**
2300 SunTrust Center
200 South Orange Avenue
P.O. Box 112
Orlando, FL 32802-0112
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: mvitale@bakerlaw.com

*Attorneys for Specially Appearing Defendants*
AVENTUS OUTREACH, LLC; OLIVER DAWOUD; AVENTUS BIO LABS, INC.; and AVENTUS HEALTH, LLC



**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NOCHER ENTERPRISES, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>AVENTUS OUTREACH, LLC, a Florida limited liability company; OLIVER DAWOUD, an individual; AVENTUS BIO LABS, INC., a Florida corporation, and AVENTUS HEALTH, LLC, a Florida limited liability company,<br><br>Defendants. | Case No.: 2:18-cv-03897 RSWL (JEMx)<br><br>Honorable Ronald S.W. Lew<br><br>**REPLY IN SUPPORT OF SPECIALLY APPEARING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION (FED. R. CIV. P. 12(b)(2))**<br><br>Date: September 25, 2018<br>Time: 10:00 a.m.<br>Courtroom: TBD<br><br>Action Filed: March 5, 2018 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 1

II. SUMMARY OF MATERIAL FACTS ..... 1

III. ARGUMENT ..... 4

A. General Jurisdiction Does Not Exist. ..... 4

B. Plaintiff Offers Insufficient Evidence and No Argument With Respect to Specific Jurisdiction Over Bio Labs and Dawoud. ..... 5

C. Nocher Cannot Demonstrate Purposeful Availment by Defendants. ..... 6

D. The Exercise of Jurisdiction Does not Comport with Notions of Fair Play and Substantial Justice ..... 10

IV. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance Data Sys. Corp. v. Blackstone Cap. Partners v. L.P.*,
963 A.2d 746 (Del. Ch. 2009)....5

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008)....6, 7

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017)....7

*Calder v. Jones*,
465 U.S. 783 (1984)....8

*Cemex Constr. Materials of Fla., LLC v. Armstrong World Indus., Inc.*,
No. 3:16-cv-186-J-34JRK, 2018 WL 905752 (M.D. Fla. Feb. 15, 2018)....9

*Core-Vent Corp. v. Nobel Indus. AB*,
11 F.3d 1482 (9th Cir. 1993)....11

*Dole Food Co., Inc. v. Watts*,
303 F.3d 1104 (9th Cir. 2002)....8

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
316CV00014GPCBLM, 2016 WL 6523428 (S.D. Cal. Nov. 3, 2016)....10

*Peterson v. Kennedy*,
771 F.2d 1244 (9th Cir. 1985)....7

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015)....5

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004)....7, 8

*Slepian v. Guerin*,
172 F.3d 58 (9th Cir. 1999)....7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
996 F. Supp. 2d 942 (S.D. Cal. 2014) ........................................ 10
*In re Target Corp. Data Sec. Breach Litig.*,
66 F. Supp. 3d 1154 (D. Minn. 2014) ........................................ 10
*Terracom v. Valley Nat. Bank*,
49 F.3d 555 (9th Cir. 1995) ........................................ 11
*Tiara Condo. Ass'n v. March & McLennan Cos.*,
110 So. 3d 399 (Fla. 2013) (Pariente, J., concurring) ........................................ 9
*U.S. v. Bestfoods*,
524 U.S. 51 (1998) ........................................ 5
*Walden v. Fiore*,
571 U.S. 277 (2014) ........................................ 7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is breach of contract action between a California Plaintiff ("Nocher" or "Plaintiff") and four Florida Defendants regarding a purported "contract" which, if it was formed, was negotiated and formed in Florida, and should be litigated in the State of Florida. In its Response in Opposition to the Motion to Dismiss for Lack of Personal Jurisdiction (the "Response"), Nocher recites precious few cases to the Court, and instead attempts to insert a series of irrelevant facts into this jurisdictional dispute. The facts remain undisputed that Defendants' contacts with California through the nature of their business – testing medical specimens from all over the United States at their Florida laboratories – is insignificant as a whole, and at best tangentially relevant to this payment dispute. Plaintiff's First Amended Complaint ("Complaint") confirms that the alleged actions giving rise to Plaintiff's claims occurred outside of California. Plaintiff provides no facts or law which alter this analysis, and it would offend notions of fair play and substantial justice to hale Defendants into this Court. Accordingly, this case should be dismissed for lack of personal jurisdiction over the Defendants.

## II. SUMMARY OF MATERIAL FACTS

Nocher agrees with or does not challenge many of the key facts which are material to this Motion. Plaintiff is a California corporation, and Defendants consist of one Florida resident and three Florida corporate entities, with their principal places of business all in the State of Florida. The parties entered into an alleged agreement whereby Nocher would encourage physicians who he allegedly had an existing business relationship with to send their patients' medical samples to Defendants' laboratories for testing. (Dkt. No. 13, ¶ 12, 34). Nocher, which is not a medical provider, could not and did not collect and send the samples itself. (Declaration of Oliver Dawoud in Support of Reply "Reply Decl." at ¶ 5). One or more of the Defendants allegedly then agreed to compensate Nocher based on if Defendants were

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

able to adequately test the sample and receive payment for performing the testing. (Dkt. No. 13, ¶¶ 12, 34).

Contract negotiations occurred when representatives of Nocher traveled to the State of Florida to negotiate in person with representatives of one or more of the Defendants. Defendants have presented evidence that three (3) meetings occurred between Defendant Aventus Outreach, LLC ("Outreach") and Nocher in the State of Florida. (Dkt. No. 17-1 at ¶ 20). Nocher admits to one of the three meetings and is silent as to whether the other two occurred. (*See* Nocher Dec. at ¶ 4). Both parties admit that all of the other "negotiations" were done through telephone and electronic messages. (*Id*. at ¶ 4; Dkt. No. 17-1 at ¶¶ 20-21). None of the negotiations took place in California.

There is no written contract between the parties. (Dkt. No. 13, ¶¶ 12, 34). All medical samples were transmitted to Defendants' laboratories for testing. (Dkt. No. 17-1, ¶¶ 22-23). All payments were transmitted to Nocher out of the State of Florida, from Florida financial institutions. Likewise, Defendants maintained storage and records for testing in their offices, not the Plaintiff's. (*Id*. at ¶¶ 26-31; see also Reply Decl. at ¶ 9).

No one has raised an issue in this case with the quality of the testing performed, and for that reason, Defendants respectfully submit that the issue of the physical situs of the origin of the biological samples is largely irrelevant. Nevertheless, Nocher takes great pains to make a deep dive into these issues. Nocher submits that the majority of patient testing samples were extracted by physicians in the State of California. (Dkt. No. 21, p. 6). For purposes of this Motion, Defendants will not refute this statement, although, as noted, they question its relevance. Defendants also presented evidence that many of the samples Nocher allegedly arranged to be tested by Outreach were from patients in Florida, Texas, Ohio, North Carolina, and Pennsylvania, with the samples coming from Florida for the longest duration (several months) that samples arrived from Nocher's physicians. (Dkt. No. 17-1 at ¶ 25).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Nocher also testifies that approximately 2500 of the 11,000 samples for which Nocher arranged to be tested were not tested in Florida. (Dkt. No. 21, p. 6). Even if true, this amounts to only 22.7% of all samples. Both parties agree that none of the samples were tested in California, and both parties agree that the majority of samples were tested in Florida.[1] (*See, e.g.*, *id*. at pp. 6-7; Dkt. No. 17-1 at ¶¶ 23-25).

In an effort to create a tort claim where none exists, Nocher spends significant time testifying that representatives from Defendants lied about payments received for testing and send inaccurate spreadsheets to Nocher to justify their lack of payment. (Nocher Decl. at pp. 5-7). Nocher also testifies that it was locked out of the online portal by Defendants. (*Id*.) In fact, Nocher never should have had or should have attempted to gain access to such portal. (Reply Decl. at ¶ 9). All communications with Nocher regarding the alleged agreement originated out of Florida and all access to the servers in questions was maintained by Defendants' at their offices in Florida. (*Id*.)

Defendant Oliver Dawoud is an individual and resident of the State of Florida who has never owned a business in the State of California. (Dkt. No. 17-1, ¶¶ 4, 37). He does not own any property in California, does not engage in any business activity in California, and has little, if any, contact with the State. (Dkt. No. 17-1, ¶¶ 35, 39). All of his alleged actions in this case were performed on behalf of Outreach, and there is no basis to sue him individually, particularly in a State where he does not reside. (Dkt. No. 17-1, ¶ 33). Plaintiff provides no facts to support the exercise of jurisdiction against Dawoud individually, and even admits that Dawoud's actions were "as the agent and representative" of Defendants. (Nocher Decl. at ¶ 4).

Defendant Aventus Bio Labs, Inc. ("Bio Labs") is a dissolved corporation which has never done business of any kind, let alone in the State of California.

---

[1] Nocher claims that samples were tested in Florida, Georgia, Mississippi, Montana, and Arkansas. Outreach claims that samples were tested in Florida and Georgia, but some samples were accessioned in some of those other states due to insurance requirements. (*See* Reply Decl. at ¶¶ 6-7). No party submits that any testing took place in California.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(Declaration of Nagi Youssef, M.D. (Dkt. No. 17-2, ¶¶ 5-7). In addition, Bio Labs is no longer an active company and there was no basis to sue it in this lawsuit. (Dkt. No. 17-2, ¶ 3, 11). Plaintiff provides no facts to support the exercise of jurisdiction against Bio Labs, except for an amorphous statement attributed to Dawoud that all of the Defendants are "one and the same entity." (Nocher Decl. at ¶ 4). This statement is contradicted by the corporate filings provided by Biolabs and the contradictory statement by Mr. Nocher that the Aventus Defendants were separately organized according to the type of provider-source [sic] or payor source." (*See* Dkt. No. 17-2; Nocher Decl. at ¶ 4).

Defendants Aventus Health, LLC ("Health") and Outreach are Florida limited liability companies that each have their principal place of business in Florida. (Doc. No. 17-2, ¶ 12; Dkt. No. 17-1, ¶ 3). At all times material to the facts giving rise to this lawsuit, all of the members of both entities were Florida citizens.[2] (Dkt. No. 17-2, ¶ 13; Dkt. No. 17-1, ¶ 4). Outreach is the only entity that entered into negotiations with Nocher, and Health performed some of the testing of the medical specimens which Nocher arranged to be sent to Florida for testing. (Dkt. No. 17-1, ¶¶ 18-21; Dkt. No. 17-2, ¶ 22). Neither Health nor Outreach own property or lease space in California, advertise in California, operate a testing laboratory in California, or regularly conduct business in the State. (Dkt. No. 17-2, ¶¶ 16, 18, 21-23; Dkt. No. 17-1, ¶¶ 9-10, 12, 22-23). In addition, neither Health nor Outreach currently conduct any business in California. (Dkt. No. 17-2, ¶ 16; Dkt. No. 17-1, ¶ 9).

## III. ARGUMENT

### A. General Jurisdiction Does Not Exist.

Plaintiff does not rebut the argument that no general jurisdiction exists over any of the Defendants. Therefore, jurisdiction is only proper in this case if Nocher

[2] Health and Outreach are in the process of undergoing corporate reorganizations, which were recently commenced and were not underway when the facts giving rise to the lawsuit occurred, nor when this lawsuit was filed.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

can demonstrate that the exercise of specific jurisdiction is proper. For the reasons that follow, it cannot.

**B. <u>Plaintiff Offers Insufficient Evidence and No Argument With Respect to Specific Jurisdiction Over Bio Labs and Dawoud.</u>**

Nocher offers no evidence and no argument to avoid dismissal for lack of jurisdiction over Defendants Bio Labs and Dawoud. Nocher's Response simply lumps all Defendants together, making no argument for the retention of jurisdiction over Bio Labs, a defunct entity that has never had any contact with Nocher. The law is clear that jurisdiction cannot exist over a defendant merely because an affiliated entity purportedly engaged in wrongdoing. It is well-established that "the existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015). "It is a general principle of corporate law deeply ingrained in our legal system that a corporation is not liable for the acts of its subsidiaries." *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998). The law typically "respects corporate formalities … recognizing that the wealth-generating potential of corporate and other limited liability entities would be stymied if it did otherwise." *Alliance Data Sys. Corp. v. Blackstone Cap. Partners v. L.P.*, 963 A.2d 746, 769 (Del. Ch. 2009).

For similar reasons, individual Defendant Dawoud must also be dismissed. Both Dawoud and Bio Labs have had no relevant contact with California, do not engage in specimen testing, and never were parties to any agreement with Nocher. Nocher even admits that Dawoud's actions were done as an agent and representative of the Aventus entities, and the Amended Complaint seeks no distinct damages from Dawoud separate and apart from what it was allegedly owed under the purported contract. There is no basis for Dawoud to remain in this case in his individual capacity, and Plaintiff has not met its burden of establishing sufficient contacts with California on behalf of either entity.





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### C. Nocher Cannot Demonstrate Purposeful Availment by Defendants.

Nocher advances four arguments in support of its argument that "defendants" purposefully availed themselves of the forum, each of which are unpersuasive, and none of which are supported by case law.

First, Nocher argues that this criterion is met because "defendants" engaged a California entity to procure samples from California health care providers. (Dkt. No. 21, p. 9). At the outset, this statement is untrue, as only Outreach negotiated with Nocher, and only some of the samples came from California providers. In any event, merely entering into an alleged contract with a California resident is not enough to confer jurisdiction. "[W]e are guided by the Supreme Court's admonition that the formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction." *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008).

It is also important to note that the alleged contract at issue did not require Nocher to conduct any business in California. The alleged contract at issue merely required Nocher to seek to direct physicians *anywhere* to use Outreach or Health for biomedical testing *in Florida*, and for Outreach to pay Nocher (an un-agreed upon sum) once it was paid in turn for performing such testing. (*See* Dkt. No. 13, ¶ 12). The contract did not require Nocher to send California-based samples to Outreach, and in fact many of the samples did not come from California. The fact that Nocher had separate contracts and business relationships with California doctors cannot transform these contacts into Defendants' contacts with the forum state. *See, e.g.*, *Boschetto*, 539 F.3d at 1017 (an individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts to support personal jurisdiction). The relationship between the defendant and the forum state "must arise out of contacts that the 'defendant [itself]' creates with the forum State," not connections that the plaintiff has made with the forum state. *Williams*, 851 F.3d at 1023. "We have consistently rejected attempts to satisfy the defendant-focused

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Next, Nocher argues that purposeful availment can be established because "defendants" delivered testing supplies to California providers to facilitate the medical testing. This is also insufficient to create a substantial connection with California. *See Boschetto*, 539 F.3d at 1017 (delivery of goods in California insufficient in and of itself to demonstrate purposeful availment). This is not a case where the quality of the testing kits or of the tests themselves have been placed at issue. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (fact that product was sold in California and defendant did some California business insufficient to show specific jurisdiction); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 804 (9th Cir. 2004) (a foreign act with foreseeable effects in the forum state does not always give rise to specific personal jurisdiction) (internal marks omitted). In fact, Nocher itself describes this as a "collections" case. (Dkt. No. 21, p. 5). As explained in further detail in Defendants' Motion, there is an insufficient nexus between Defendants' activities and the claims at issue in this lawsuit.

Next, Nocher argues that the fact that an unnamed defendant sent an email to Nocher allegedly referring to "CA STATE CLIENTS" demonstrates purposeful availment. Setting aside the fact that this email is not in evidence, the allegation that an unidentified non-attorney employee of one of the defendants used the misnomer "clients" to refer presumably to Nocher physician's patients cannot be given the legal significance Plaintiff wishes. Further, the law is clear that, ordinarily, "use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state." *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985); *see also Slepian v. Guerin*, 172 F.3d 58 (9th Cir. 1999) (plaintiff's "use of phone, fax, and electronic mail to perform some of her job duties from home does not establish that [employer] conducted sufficient activities in the forum" to create specific jurisdiction).

Finally, Nocher appears to argue in a separate section of its Response that purposeful availment is satisfied because “Defendants” made misrepresentations targeting a California resident. In doing so, Nocher relies on *Calder v. Jones*, 465 U.S. 783 (1984) and *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). However, these cases are inapposite. *Calder* dealt with the publication of a defamatory article targeted at a California resident. *Calder*, 465 U.S. at 783. It is far afield factually and simply cannot be given the weight attributed to it by Plaintiff. *See Schwarzenegger*, 374 F.3d at 804 (*Calder* “cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific [personal] jurisdiction”).

*Dole* dealt with fraudulent inducement, fraud, and conversion by foreign employees of the plaintiff corporation aimed at inducing the plaintiff corporation to sign leases at far above market value with foreign companies secretly owned by the defendants. It is also factually distinguishable, and appears, at least in *dicta*, to support not being extended to situations like the present one:

> A finding of “express aiming” in this case does not mean “that a foreign act with foreseeable effects in the forum states always gives rise to specific jurisdiction.” […] For example, we do not believe that the mere submission of a fraudulent time card by [foreign employees] would constitute a showing of express aiming at California. Nor do we believe that personal jurisdiction may be asserted whenever a foreign employee communicates with a corporation's headquarters about foreign operations.

*Dole*, 303 F.3d at 1112.

Furthermore, purposeful availment cannot be established under the “effects” test for tort cases, because this is a breach of contract case, *and Nocher has no legally valid claim for fraud or negligent misrepresentation*. The only false misrepresentations the “defendants” allegedly made to Nocher are that (a) they promised to pay Nocher a reasonable fee at the time of contracting and, later falsely stated that: (b) they could not pay Nocher, did not have the ability to pay Nocher, and



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Nocher was not entitled to further payment, and (c) sent a spreadsheet which they claimed demonstrated Nocher was not entitled to further payment, but in actuality was untrue and/or filled with mistakes and figures that Nocher could not verify. (Dkt. No. 13 at ¶¶ 12, 18-22, 25). Essentially, Nocher is alleging that Defendants fraudulently or negligently misrepresented that Nocher would be paid under the parties' agreement. (*Id*. at ¶ 25) ("defendants … acted without reasonable grounds to believe the truth of the alleged inability to pay plaintiff due to defendants not having been paid on the specimens".)

The law does not recognize a claim for fraud in the performance of a contract. *Cemex Constr. Materials of Fla., LLC v. Armstrong World Indus., Inc.*, No. 3:16-cv-186-J-34JRK, 2018 WL 905752, at *10 (M.D. Fla. Feb. 15, 2018). "[W]hen the parties have negotiated remedies for nonperformance pursuant to a contract, one party may not seek to obtain a better bargain than it made by turning a breach of contract into a tort for economic loss." *Id.* (quoting *Tiara Condo. Ass'n v. March & McLennan Cos.*, 110 So. 3d 399, 408 (Fla. 2013) (Pariente, J., concurring)). This is especially true where "it is by virtue of the misrepresentations" that the breach of contract is accomplished and where the harm flowing from the fraud is indistinct from the harm flowing from the breach of contract. *Id.* Here, Nocher's allegations of "misrepresentations" go directly to Defendants' alleged nonperformance of contractual duties. Nocher's fraud allegations are thus nothing more than fraud in the performance of the alleged agreement—*i.e.*, that Defendants committed fraud in promising to perform and, then, not performing. Simply put, based on the allegations in the Complaint, the alleged fraud lies not with the statements themselves but with Defendants' alleged nonperformance. These averments do not create an independent tort. *See Cemex*, 2018 WL 905752, at *11 (rejecting fraud claims related solely to the manner in which the defendant "accomplished the alleged breach" of contract).

Nocher's negligent misrepresentation claim is also barred by the economic loss rule. Under California law, "recovery of purely economic loss is foreclosed" in tort

actions unless the plaintiff can allege: "(1) personal injury, (2) physical damage to property, (3) a special relationship existing between the parties, or (4) some other common law exception to the rule." *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 316CV00014GPCBLM, 2016 WL 6523428, at *12 (S.D. Cal. Nov. 3, 2016). Here, Nocher purports to have suffered an economic injury, but does not allege any personal injuries or property damage, or that Nocher and Defendants had anything other than an ordinary commercial relationship. This conclusion is buttressed by the fact that Nocher seeks the same amount in compensatory damages under Count I as it does in its breach of contract counts. (See Dkt. No. 13 at pp. 7-9). As such, Nocher's claim is not cognizable under California law. *See Dugas*, 2016 WL 6523428, at *12 (economic loss doctrine barred negligence claim under California law based on data breach of hotel's payment card system); *see also In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1172 (D. Minn. 2014) (same, applying California law); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 973 (S.D. Cal. 2014) (same).

**D. <u>The Exercise of Jurisdiction Does not Comport with Notions of Fair Play and Substantial Justice.</u>**

Curiously, Nocher makes no dedicated legal argument in its Response that it has satisfied the second prong of the jurisdictional analysis, namely, that its claim arises out of Defendants' forum related activities. This alone warrants dismissal. Nevertheless, even though the Court need not reach the third and final criterion, it would be fundamentally unfair to hale Defendants into California to defend against this Florida-based contract action. This Court may consider seven factors: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief;

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

and (7) the existence of an alternative forum. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993).

All of the Defendants are Florida residents that do not maintain places of business in California. None of the Defendants do any business in California anymore, and two of the Defendants (Bio Labs and Dawoud) never did any business here. Defendants Outreach and Health have only minimally interjected themselves into the forum state, with contacts that have little nexus to the contract being disputed. Bio Labs and Dawoud have not interjected themselves into California affairs at all. Forcing foreign defendants to travel thousands of miles to defend themselves in a state in which they cannot reasonably have foreseen being sued would be unjust and unfairly burdensome. *See Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995) ("the law of personal jurisdiction is asymmetrical and is primarily concerned with the defendant's burden."). This is particularly so for Dawoud and Bio Labs, who are not Defendants of unlimited means.

By contrast, Florida has a strong interest in seeing that contracts negotiated and performed in that state are litigated in its courts. Proceeding in California instead of Florida would also be inefficient, as many individuals that Defendants would call as trial witnesses, and the documents they would offer into evidence, would be coming from out-of-state. *See Terracom*, 49 F.3d at 561 (noting that a forum's efficiency is to be evaluated by looking at where witnesses and evidence are located). Finally, Nocher does not contest that it has an alternative forum for its claims in Florida.[3] (Dkt. No. 21, p. 11). While Nocher argues that advances in technology make litigating across the country less burdensome than in prior years (Doc. No. 21, p. 10), the same argument goes for Nocher litigating this case where the contract was formed – in Florida. The Court should also note that Nocher has already traveled to

[3] Nocher appears to suggest that Defendants may have a viable *forum non conveniens* venue challenge. (Dkt. No. 21, p. 11). Defendants are researching this issue and reserve their right to assert such a challenge within a reasonable time after this issue is decided.

Florida several times in connection with the alleged contract at issue, while Defendants have never traveled to California in connection with this dispute.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully move this Court to dismiss this action with prejudice against all Defendants for lack of personal jurisdiction, and award Defendants their costs of suit.

Dated: September 11, 2018

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: /s/Michael R. Matthias
Michael R. Matthias
Joelle A. Berle

*Attorneys for Specially Appearing Defendants*
AVENTUS OUTREACH, LLC; OLIVER DAWOUD; AVENTUS BIO LABS, INC.; and AVENTUS HEALTH, LLC