1                                                              O

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12   Nocher Enterprises, Inc. a    )   **CV 18-3897-RSWL (JEMx)**
     California corporation,        )
13                                  )
                     Plaintiff,     )   **ORDER re: Defendants'**
14                                  )   **Motion to Dismiss for**
                                    )   **Lack of Personal**
15       v.                         )   **Jurisdiction [17] and**
                                    )   **Motion to Dismiss for**
16                                  )   **Failure to State a Claim**
     AVENTUS OUTREACH, LLC, a       )   **[18]**
17   Florida limited liability      )
     company; OLIVER DAWOUD, an     )
18   individual; AVENTUS BIO        )
     LABS, INC., a Florida          )
19   corporation; and AVENTUS       )
     HEALTH, LLC, a Florida         )
20   limited liability company,     )

21
                     Defendants.
22   _____

23       Plaintiff Nocher Enterprises, Inc. ("Plaintiff")

24   filed the instant Action against Defendants Aventus

25   Outreach, LLC ("Outreach"); Aventus Health, LLC

26   ("Health"); Oliver Dawoud ("Dawoud"); and Aventus Bio

27   Labs, Inc. ("Bio Labs") (collectively, "Defendants"),

28   for damages arising from an alleged breach of contract

                                    1

and negligent misrepresentation.  Currently before the Court is Defendants' Motions to Dismiss for (a) lack of personal jurisdiction [17] and (b) failure to state a claim [18].  Having reviewed all papers submitted pertaining to these Motions, the Court **NOW FINDS AND RULES AS FOLLOWS:**

## I. BACKGROUND

### A. <u>Factual Background</u>

Plaintiff is a California corporation doing business in California.  First Am. Compl. ("FAC") ¶ 1, ECF No. 13.  Defendants Outreach and Health are Florida limited liability companies, Bio Labs was a Florida corporation,[1] and Dawoud is an individual and the principal/owner of Outreach.  <u>Id.</u> ¶¶ 2-5.  The nature of Defendants' business is "testing medical specimens from all over the United States at their Florida laboratories."  Defs.' Mot. to Dismiss re Personal Jurisdiction ("Jurisdiction Mot.") 1:13-14, ECF No. 17.  Defendants "held themselves out as one and [the] same entity" and under the "same banner and trade name of Aventus Biolabs a/k/a AventusBiolabs.com."  FAC ¶ 7.

Plaintiff alleges that on April 19, 2017, Defendants invited Plaintiff to "enroll its accounts" with Defendants for the sale and service of "specimens" to Defendants as ordered by Defendants.  <u>Id.</u> ¶ 12.  At

---

[1] According to Defendants, Bio Labs is a dissolved corporation that never did any business.  Jurisdiction Mot. at 11:27-28.

that time, Defendants promised to pay Plaintiff a specified percentage of the net payment that Defendants would receive from testing the specimens.  Id. Defendants also promised to account for their collections by providing Plaintiff with summarized reports indicating the amount collected per claim, provider name, and claim date, and an access to an online portal to verify collection data.  Plaintiff alleges that in reliance on Defendants' promises, it started delivering specimens to Defendants.  Id.

According to Plaintiff, Defendants avoided doing business with California entities due to state laws but made an exception for Plaintiff because of the expected large volume of business it would generate for Defendants.  Id. ¶ 11.  The primary source of specimens provided by Plaintiff were from California providers[2] (e.g., hospitals, doctors, and rehabilitation centers). Id. ¶ 13.

As of August 2017, Defendants paid Plaintiff $170,000 for approximately 600 specimens out of the 11,000 specimens Plaintiff provided, which Plaintiff alleges Defendants have collected millions of dollars from.  FAC ¶¶ 17, 23.  Defendants did not provide reports on collections to Plaintiff and denied Plaintiff access to the online portal.  Id. ¶ 17. In November 2017, after Plaintiff repeatedly requested

---

[2] Approximately 85% of providers from which Plaintiff procured the specimens were California based.  FAC ¶ 15.

payment and an accounting, Defendants e-mailed Plaintiff an Excel spreadsheet "that was purportedly the amount of collection [D]efendants made on [P]laintiff's samples for September 2017." Id. ¶ 18. However, according to Plaintiff, Defendants had "materially falsified the amounts collected . . . to justify not paying [P]laintiff any money for the samples." Id. ¶ 19.

As a result, Plaintiff filed this Action against Defendants, alleging negligent misrepresentation, breach of implied contract, breach of oral contract, common counts, unjust enrichment, and accounting. See generally id.

**B.   Procedural Background**

This case was Removed from Superior Court [1] to this Court on May 9, 2018.  Plaintiff filed its FAC [13] on July 9, 2018.  Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction [17] and a Motion to Dismiss for Failure to State a Cause of Action [18] on August 13, 2018.  Plaintiff filed its Oppositions [19, 21] to the instant Motions on September 1, 2018.  On September 11, 2018, Defendants filed their Replies [25, 27] to each Opposition as well as Objections to the Declaration of Jamie Nocher [26, 28].

///

///

///

## II. DISCUSSION

**A.  Legal Standard**

   1.  Personal Jurisdiction

   When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the Court may properly exercise jurisdiction over the defendant.  Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).  Absent formal discovery or an evidentiary hearing, a plaintiff need only make a prima facie showing that jurisdiction is proper to survive dismissal.  Id. at 1154.

   To satisfy this burden, a plaintiff can rely on the allegations in his complaint to the extent they are not controverted by the moving party.  Barantsevich v. VTB Bank, 954 F. Supp. 2d 972, 982 (C.D. Cal. 2013).  If defendants adduce evidence controverting the allegations, however, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction."  Id. at 982 (citation omitted). "Conflicts between parties over statements contained in affidavits [or declarations] must be resolved in the plaintiff's favor."  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).

   "The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." Pebble Beach, 453 F.3d at 1154-55.  California

5

authorizes jurisdiction to the full extent permitted by the Constitution.  See Cal. Code Civ. Proc. § 410. Therefore, the only question the Court must ask is whether the exercise of jurisdiction over defendants would be consistent with due process.  Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003).

Due process requires that a defendant must have such "minimum contacts" with the forum state that "maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Minimum contracts requires that the defendant must have purposefully availed itself of the privilege of conducting activities within the foreign jurisdiction, thereby invoking the benefits and protections of the foreign jurisdiction's laws.  See Asahi Metal Indus. Co. v. Sup. Ct. of Cal., 480 U.S. 102, 109 (1987).

There are two recognized bases for exercising jurisdiction over a nonresident defendant: (1) "general jurisdiction," which arises where defendant's activities in the forum are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over him in all matters; and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum give rise to the claim in question.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984).

1        2.   <u>Failure to State a Claim</u>

2        Federal Rule of Civil Procedure ("FRCP") 12(b)(6)

3   allows a party to move for dismissal of one or more

4   claims if the pleading fails to state a claim upon

5   which relief can be granted.  A complaint must contain

6   sufficient facts, accepted as true, to state a

7   plausible claim for relief.  <u>Ashcroft v. Iqbal</u>, 556

8   U.S. 662, 678 (2009) (quotation omitted).  Dismissal is

9   warranted for a "lack of a cognizable legal theory or

10  the absence of sufficient facts alleged under a

11  cognizable legal theory." <u>Balistreri v. Pacifica</u>

12  <u>Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988)

13  (citation omitted).

14       "In ruling on a 12(b)(6) motion, a court may

15  generally consider only allegations contained in the

16  pleadings, exhibits attached to the complaint, and

17  matters properly subject to judicial notice." <u>Swartz</u>

18  <u>v. KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007)

19  (citation omitted).  A court must presume all factual

20  allegations to be true and draw all reasonable

21  inferences in favor of the non-moving party.  <u>Klarfeld</u>

22  <u>v. United States</u>, 944 F.2d 583, 585 (9th Cir. 1991).

23  The question is not whether the plaintiff will

24  ultimately prevail, but whether the plaintiff is

25  entitled to present evidence to support the claims.

26  <u>Jackson v. Birmingham Bd. of Educ.</u>, 544 U.S. 167, 184

27  (2005) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236

28  (1974)).  While a complaint need not contain detailed

factual allegations, a plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

**B.   Discussion**

    1.   <u>Personal Jurisdiction</u>

        a.   *Defendants' Evidentiary Objections*

Defendants filed objections to paragraphs six, ten, and eighteen, in the Declaration of Jamie Nocher [22] filed by Plaintiff.  <u>See</u> Defs.' Objs. to Decl., ECF No. 26.  Defendants' objections to paragraphs six and ten are **OVERRULED as Moot** because the Court does not rely on the evidence.  Defendants' objection to paragraph eighteen is **OVERRULED as Moot** with respect to the first sentence,[3] as it is not relied on by the Court.  With respect to the subsequent sentences,[4] the objection is **OVERRULED** because Nocher, the principal manager, operator, and owner of Plaintiff, has personal knowledge and there is no inadmissible hearsay.

        b.   *Defendants Bio Labs, Outreach, and Health*

           i.   *General Jurisdiction*

The Court cannot exercise general jurisdiction over

---

[3] "Plaintiff is informed that defendants have collected millions of dollars from the 10,400 specimens plaintiff provided and for which remain unpaid."  Objs. at 3:8-12.

[4] "Whereas, plaintiff has provided and furnished defendants approximately 11,000 specimens for which defendants have paid only for 600 specimens.  Since that time defendants have not provided any accounting of the collections on the specimens."  Objs. at 3:12-18.

1  Defendants Bio Labs,[5] Outreach, and Health (hereinafter

2  "Corporate Defendants").  General jurisdiction over a

3  foreign corporation is appropriate when the

4  corporation' "affiliations with the State are so

5  'continuous and systematic' as to render them

6  essentially at home in the forum State." Goodyear

7  Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915,

8  919 (2011) (citing Int'l Shoe, 326 U.S. 310, 317

9  (1945)).

10     Corporate Defendants were all organized in Florida

11 and have their principal places of business there.

12 Jurisdiction Mot. at 11:19-21.  Plaintiff did not

13 oppose Defendants' argument that Corporate Defendants

14 do not regularly conduct business in California.  Id.

15 at 4:6-10.  Nor did Plaintiff oppose Defendants'

16 assertion that they do not have employees, nor any

17 place of business, in California.  Id. at 4:6-10.

18 Thus, Corporate Defendants contacts with California are

19 not substantial enough to render them "at home" in

20 California.

21          ii. *Specific Jurisdiction*

22     The Ninth Circuit employs a three-part test to

23 determine whether a court has specific jurisdiction

24 ———————————————

25     [5] Although Defendants argue Bio Labs was not a party to the
   alleged contract, and that it never conducted any business,
26 Plaintiff argues it entered into a contract with Bio Labs,
   Outreach, and Health because they were allegedly held out to be
27 one and the same entity.  Nocher Decl. at 2-4.  Resolving this
   conflict of statements in Plaintiff's favor, as is required at
28 this juncture, the Court includes Bio Labs in its analysis.

over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1227-28 (9th Cir. 2011) (citations omitted). Plaintiff bears the burden of proving the first two prongs, and if the Plaintiff does so, the burden shifts to the Defendants to prove a "compelling case" the exercise of jurisdiction would be unreasonable.  Id. at 1228.

### A.  *Purposeful* Availment

"A purposeful availment analysis is most often used in suits sounding in contract." Schwarzenegger, 374 F.3d at 802.  This suit sounds primarily in contract because the alleged fraud arises out of Corporate Defendants' false representations that they would pay Plaintiff a reasonable amount of money and provide Plaintiff with accurate accounts, which are also the grounds for Plaintiff's breach of contract claims.  FAC ¶¶ 12, 19, 30-36.  See HK China Group, Inc. v. Beijing United Auto & Motorcycle Mfg. Corp., 417 Fed. App'x. 664, 665 (9th Cir. 2011) ("Suits that include both a breach of contract claim and a fraud claim may 'sound

primarily in contract' when the alleged fraud is merely the representations in the contract that gave rise to the breach."). Thus, a purposeful availment analysis is proper.

"An out-of-state party does not purposefully avail itself of a forum merely by entering into a contract with a forum resident." HK China Group, Inc., 417 F. App'x. at 666 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985)). "[P]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are considered. Burger King, 471 U.S. at 479.

### 1.  *Prior Negotiations*

Corporate Defendants argue that they did not purposefully avail themselves of California because Plaintiff initiated negotiations and met with Corporate Defendants in Florida. Dawoud Decl. ¶¶ 15, 16, 20. While such activity weighs against purposeful availment, it is not determinative. See Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1480 (9th Cir. 1986) ("[T]he fact that contract negotiations . . . occurred outside of California is not determinative."); LocusPoint Networks, LLC v. D.T.V., LLC, No. 3:14-cv-01278-JSC, 2014 WL 3836792, at *5 (N.D. Cal. Aug. 1, 2014) (finding that defendant solicited plaintiff's business even though plaintiff initiated contact). Plaintiff responds that negotiations also occurred via telephone, email, and

1 text-message, but this fact is neutral since "use of

2 the mails, telephone, or other international

3 communications simply do not qualify as purposeful

4 activity invoking the benefits and protection of the

5 [forum] state." <u>Peterson v. Kennedy</u>, 771 F.2d 1244,

6 1262 (9th Cir. 1985)).

7     Nonetheless, the remaining circumstances

8 surrounding negotiations support a finding of

9 purposeful availment.  Plaintiff alleges Corporate

10 Defendants normally avoided doing business in

11 California but made an exception for Plaintiff "because

12 of the anticipated large volume of business it expected

13 to generate . . . knowing full well that it was

14 engaging a California business entity who had special

15 relationships with California-based providers."  FAC ¶

16 11.  Corporate Defendants knew the primary source of

17 specimens plaintiff would procure were from California

18 providers, and "California was the primary business-

19 source [Corporate Defendants] targeted when it engaged

20 [Plaintiff] to provide the samples."  FAC ¶¶ 13, 15.

21 As such, Corporate Defendants invited Plaintiff to

22 enroll its accounts.  <u>Id.</u> ¶ 12.  <u>See</u> <u>Vuori v.</u>

23 <u>Grasshopper Capital LLC</u>, No. 17-cv-06362-JCS, 2018 WL

24 1014633, at *13 (N.D. Cal. Feb. 22, 2018) (finding

25 defendants solicited business in California by

26 contracting with a plaintiff defendants knew was a

27 California resident, and whose connections defendants

28 sought to benefit from).

## 2. *Future Consequences*

When evaluating contemplated future consequences, "courts focus on whether the defendant, in entering the contract, created 'continuing obligations between [itself] and residents of the forum.'" <u>Calltek, Inc. v. Call Center Systems, LLC et al.</u>, No. 8:18-cv-00384-JLS-DFMx, 2018 WL 2264205, at *7 (C.D. Cal. April 25, 2018) (citing <u>Corp. Inv. Bus. Brokers v. Melcher</u>, 824 F.2d 786, 789 (9th Cir. 1987)). By contrast, where a contract merely involves a "lone transaction for the sale of one item" purposeful availment is not established. <u>Boschetto v. Hansing</u>, 539 F.3d 1011, 1017 (9th Cir. 2008).

Here, while Plaintiff did not allege a duration for the contractual relationship, the FAC supports at least more than a "lone transaction for the sale of one item." The sale of the specimens in this Action required ongoing involvement by both parties, and Plaintiff sent specimens to Corporate Defendants over at least a four-month period of time. Opp'n at 2:23-24. <u>See</u> <u>LocusPoint Networks, LLC</u>, 2014 WL 3836792, at *6 (finding the parties' continuing obligations to one another requiring "months of substantial coordination and joint effort" leaned in favor of purposeful availment). Thus, the Court can infer an ongoing contractual relationship with ties to California.

## 3. *Terms of Contract*

Because the contract is oral or implied, it is

1   unclear precisely what its terms consist of.   See FAC

2   ¶¶ 29, 34.   In such instances where "[n]either party

3   addresses whether the terms of the parties' oral

4   agreement favor a finding of purposeful availment in a

5   meaningful way . . . . th[e] factor is neutral and does

6   not weigh in favor or against a finding of purposeful

7   availment.   Vuori, 2018 WL 1014633, at *14.

8                        4.   *Course of Dealing*

9        With respect to actual course of dealing, "courts

10  focus on whether the 'substantial and continuing

11  relationship' with the forum resident gave the

12  defendant 'fair notice that he might be subject to

13  suit' in the forum."   Calltek, Inc., 2018 WL 2264205,

14  at *8 (citing Burger King, 471 U.S. at 463).   Corporate

15  Defendants knew Plaintiff was a California entity that

16  would provide specimens predominantly from California

17  providers, and entered into a contract with Plaintiff

18  because of business volume it was anticipated to bring.

19  FAC ¶¶ 11-13.   Moreover, Corporate Defendants

20  "systematically delivered the necessary supplies and

21  equipment for the samples directly to the California

22  entities as indicated by the medical necessity forms."

23  Id. ¶ 16.   Corporate Defendants' knowledge of and

24  involvement in the procurement of California-sourced

25  specimens, reveals their contacts with California were

26  substantial and not random.   See LocusPoint Networks,

27  LLC, 2014 WL 3836792, at *7 (citing Burger King, 471

28  U.S. at 480) (reiterating that the "'quality and

nature' of Defendant's relationship with the company in California" must be more than"random, fortuitous, or attenuated."). Thus, this factor supports purposeful availment.

Because all four factors weigh in favor of finding purposeful availment, the Court finds Corporate Defendants purposefully availed themselves of the benefits and protections of California's laws.

B. *Claim Arises Out Of Forum-Related Contacts*

The Ninth Circuit relies on a "'but for' test to determine whether a particular claim arises out of forum-related activities." Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). Here, Plaintiff's claims for breach of contract and false misrepresentation arise out of its contractual relationship with Corporate Defendants. As discussed, Corporate Defendants purposefully availed themselves of California law through its contract with Plaintiff. "But for" the contract, this lawsuit would not have arisen. See Hirsch, 800 F.2d at 1480 ("Because this contract constitutes [defendant's] contacts with California, the [plaintiffs] satisfy this element of the jurisdictional test."). Thus, the claims arise out of Corporate Defendants' forum-related contacts.

C. *Reasonableness*

If a Plaintiff satisfies the first two elements of a personal jurisdiction analysis, the burden is on the

1  defendant to prove a "compelling case" that

2  jurisdiction would be unreasonable.  <u>Burger King</u>, 471

3  U.S. at 477.  Courts consider seven factors when

4  evaluating reasonableness:

> (1) the extent of the defendant's purposeful
> interjection into the forum state, (2) the
> burden on the defendant in defending in the
> forum, (3) the extent of the conflict with the
> sovereignty of the defendant's state, (4) the
> forum state's interest in adjudicating the
> dispute, (5) the most efficient judicial
> resolution of the controversy, (6) the
> importance of the forum to the plaintiff's
> interest in convenient and effective relief, and
> (7) the existence of an alternative forum.

11  <u>Bancroft & Masters, Inc. v. Augusta Nat. Inc.</u>, 223 F.3d

12  1082, 1088 (9th Cir. 2000) (citation omitted).

13  The only facts that favor Corporate Defendants are

14  that it would be burdensome for them to defend in

15  California, potential evidence is located in Florida,

16  and an alternative forum exists in Florida.  However,

17  "modern advances in communications and transportation

18  have significantly reduced the burden on litigating" in

19  a different state.  <u>Sinatra v. Nat'l Enquirer, Inc.</u>,

20  854 F.2d 1191, 1199 (9th Cir. 1988).  <u>See also</u> <u>Roth</u>,

21  942 F.2d at 623 ("[U]nless such inconvenience is so

22  great as to constitute a deprivation of due process, it

23  will not overcome clear justifications for the exercise

24  of jurisdiction.").  Moreover, the remaining factors

25  lean in favor of finding jurisdiction reasonable.  On

26  balance, Corporate Defendants have not presented a

27  "compelling case" that personal jurisdiction is

28  unreasonable.  Thus, the Court **DENIES** Defendants'

Motion to Dismiss for Lack of Personal Jurisdiction as
to Defendants Outreach, Health, and Bio Labs.

>    c.  *Defendant Dawoud*

"For an individual, the paradigm forum for the
exercise of general jurisdiction is the individual's
domicile . . . ."  Daimler AG v. Bauman, 571 U.S. 117,
137 (2014).  Dawoud states that he is, and at all
relevant times has been, a resident and citizen of
Florida.  Dawoud Decl. ¶ 4.  Plaintiff does not dispute
this fact, nor even allege that Dawoud has been to
California.  Plaintiff's allegations all are based on
Dawoud's actions and status as a principal of Corporate
Defendants.  FAC ¶¶ 5,6.  This is insufficient to
establish general personal jurisdiction over Dawoud.

With respect to specific jurisdiction, Plaintiff
has pleaded no facts to support an assertion that
Dawoud purposefully availed himself of conducting
business in California.  The FAC alleges no acts
specifically attributed to Dawoud, nor that Dawoud was
a party to the alleged contract at issue.  The only
actions attributed to Dawoud are contract negotiations
in which Dawoud acted as the agent and representative
of Outreach, Health, and Bio Labs.[6]  Nocher Decl. ¶ 4.
This is insufficient to establish that Dawoud, in his
individual capacity, should be subject to personal
jurisdiction in California.  See Davis v. Metro Prods.,

---

[6] Importantly, Dawoud never traveled to California to engage
in such negotiations.  Dawoud Decl. ¶ 21.

1   <u>Inc.</u>, 885 F.2d 515, 520 (9th Cir. 1989) (describing the

2   fiduciary-shield doctrine—"a person's mere association

3   with a corporation that causes injury in the forum

4   state is not sufficient in itself to permit that forum

5   to assert jurisdiction over the person"); <u>Shimmick</u>

6   <u>Const. Co., Inc./Obayashi Corp. v. Officine Meccaniche</u>

7   <u>Galletti-O.M.G. S.R.L.</u>, No. 13-cv-2700-BAS (JLB), 2014

8   WL 5847440, at *4 (S.D. Cal. Nov. 12, 2014) (same as to

9   a breach of contract claim).  Thus, the Court **GRANTS**

10  Defendants' Motion to Dismiss for Lack of Personal

11  Jurisdiction as to Defendant Dawoud.

12          d.  *Request for Jurisdictional Discovery*

13       Plaintiff in a footnote requests leave to conduct

14  jurisdictional discovery "to resolve those issues to

15  the Court's satisfaction."  Opp'n at 8 n.8.  Plaintiff

16  does not provide details regarding what the discovery

17  would establish.  Because Plaintiff has failed to show

18  more than speculative allegations of attenuated

19  jurisdictional contacts "in the face of specific

20  denials made by [D]efendants" thus far, "the Court need

21  not permit even limited discovery."  <u>Terracom v. Valley</u>

22  <u>Nat'l Bank</u>, 49 F.3d 555, 562 (9th Cir. 1995); <u>see</u>

23  <u>Boschetto</u>, 539 F.3d at 1020 (affirming the district

24  court's jurisdictional discovery request denial "based

25  on little more than a hunch that [discovery] might

26  yield jurisdictionally relevant facts").  Thus, the

27  Court **DENIES** Plaintiff's request as to Dawoud, and

28  **DENIES as moot** Plaintiff's request as to Corporate

1  Defendants.

2      2.  <u>Failure to State a Claim</u>[7]

3          a.  *Defendants' Evidentiary Objections*

4      Defendants object to the admissibility of the

5  Declaration of Jamie Nocher filed by Plaintiff [20].

6  <u>See</u> Defs.' Objs., ECF No. 28.  In ruling on a 12(b)(6)

7  motion the court only considers allegations in the

8  pleadings, exhibits attached to the complaint, and

9  judicially noticed matters.  <u>Swartz</u>, 476 F.3d at 763.

10  Thus, the Court **SUSTAINS** Defendants' objection.

11          b.  *Choice of Law*

12      A federal court sitting in diversity applies the

13  choice-of-law rules of the forum state.  <u>Coneff v. AT &</u>

14  <u>T Corp.</u>, 673 F.3d 1155, 1161 (9th Cir. 2012).  Thus,

15  the Court applies California's choice-of-law rules.

16  Here, the parties did not include a choice of law

17  provision in their alleged Agreement.  Therefore, the

18  Court applies California Civil Code section 1646 and

19  section 188 of the Restatement (Second) of Conflict of

20  Laws.  <u>Rutherford v. FIA Card Services, N.A.</u>, Case No:

21  11-cv-04433 DDP MANX, 2012 WL 993885, at *2 (C.D. Cal.

22  Mar. 23, 2012) (citing <u>Arno v. Club Med Inc.</u>, 22 F.3d

23  1464, 1469 n. 6 (1993)).

24      California Civil Code section 1646 requires that

25

26  ────────────

27      [7] Because the Court finds that there is no personal
jurisdiction over Defendant Dawoud, the Motion to Dismiss for
Failure to State a Claim is moot as to Defendant Dawoud, and is
28  only discussed as to the remaining Corporate Defendants.

1  "[a] contract is to be interpreted according to the law
2  and usage of the place where it is to be performed; or,
3  if it does not indicate a place of performance,
4  according to the law and usage of the place where it is
5  made."  Cal. Civ. Code § 1646.

6      The alleged Contract at issue consisted of the
7  following: (1) Plaintiff had to enroll itself for an
8  account with Defendants, (2) Defendants were to order
9  specimens from Plaintiff and direct Plaintiff to have
10 the specimens sent to their laboratories for testing,
11 (3) Defendants were to compile and provide Plaintiff
12 with summarized reports, (4) Defendants had to upload
13 test results to Defendants' online portal, and (5)
14 Defendants were to pay Plaintiff a specified portion of
15 the revenue received by Defendants in Florida.  See FAC
16 ¶¶ 12-13.  Because Defendants' principal place of
17 business is in Florida, these circumstances indicate
18 that the parties expected most of these obligations to
19 be performed in Florida.[8]  Thus, this weighs in favor of
20 applying Florida law.  See Welles v. Turner
21 Entertainment, 503 F.3d 728, 738 (9th Cir. 2007) ("When

22 _____

23      [8] Plaintiff argues that Defendants directed Plaintiff to
   send anywhere from 23-50% of the samples to laboratories in
24 jurisdictions outside of Florida, including hospitals and
   providers in Arizona, Mississippi, Montana, and Missouri.  Opp'n
25 at 11:11-15.  However, even assuming the truth of this assertion,
   it does not change the analysis.  Specifically, the Court notes
26 that at no point in time did Defendants ever request that
   Plaintiff send the samples to California.  Thus, in evaluating
27 whether California or Florida law should apply, the fact still
   favors a finding that Florida has a greater relationship to the
28 transaction than California.

the contract does not expressly specify a place of
performance . . . the place of performance is the
jurisdiction in which the circumstances indicate the
parties expected or intended the contract to be
performed.").

Moreover, the majority of the factors courts
consider pursuant to section 188 of the Restatement
(Second), Conflict of Laws favor Florida law.[9]  First,
contract negotiations predominantly occurred in
Florida.  Plaintiff initiated negotiations with
Defendants and had its representatives meet with
Defendants in Florida, while Defendants never traveled
to California.[10]  Second, as discussed above, the Court
can infer that the parties expected the bulk of
contractual duties to be performed in Florida.
Further, even if Defendants knew Plaintiff would
procure most specimens from California providers, the
location from which the specimens were procured was

---

[9] The Restatement (Second), Conflict of Laws § 188(1) states
that if parties to a contract fail to make a choice of law
agreement, the contract will be determined by the "law of the
state which, with respect to that issue, has the most significant
relationship to the transaction."  In making such determination,
relevant factors include: (1) the place of contracting, (2) the
place of negotiation of the contract, (3) the place of
performance, (4) the location of the subject matter of the
contract, and (5) the domicile, residence, nationality, place of
incorporation, and place of business of the parties.  Restatement
(Second), Conflict of Laws § 188(2).

[10] In negotiating the contract, the parties also
corresponded via telephone, email, and text-message.  However,
without more information about such correspondence, this fact is
neutral.

merely a secondary concern to Plaintiff's primary task.[11]  Lastly, the parties' domicile and place of incorporation is neutral, since Plaintiff is a California corporation doing business in California, and Defendants are Florida entities.  FAC ¶¶ 1-4.

In conclusion, these factors support a finding that Florida has the most significant relationship to the transaction.[12]  Thus, Florida law applies to the contractual claims at issue, which include Plaintiff's claims for: (1) breach of implied contract, (2) breach of oral contract, (3) common counts, (4) unjust enrichment, and (5) accounting.

Plaintiff's remaining claims for deceit/negligent misrepresentation are governed by FRCP 9(b), which applies to deceit and negligent misrepresentation

---

[11] Plaintiff alleges that "[o]n or about April 19, 2017, Plaintiff enrolled an account with defendants for the sale of specimens as ordered by defendants for defendants' laboratory." FAC ¶ 12.  (emphasis added).  Importantly, Plaintiff does not say that it enrolled an account for the sale of specimens *from California*, nor even that Plaintiff was required or directly ordered by Defendants to procure specimens from California.

[12] After determining the state with the most significant relationship to the matter, "the court then applies that information to factors set out in section 6(2) of the Restatement, such as the interstate system's needs, the various states' respective interests in the issue, the protection of the reasonable expectations, and that provision of uniform, predictable results." Rutherford v. FIA Card Services, N.A., No. CV 11-04433 DDP (MANx), 2012 WL 5830081, at *4 (C.D. Cal. Nov. 16, 2012).  Because the Section 188(2) factors weigh in favor of applying Florida law, the section 6(2) factors also weigh in favor of Florida law.  Id. (concluding that because the section 188(2) factors weighed in favor of California, the section 6(2) factors favored application of California law).

1  claims in Florida and California.  <u>Lamm v. State St.</u>

2  <u>Bank & Tr.</u>, 749 F.3d 938, 951 (11th Cir. 2014) ("Rule

3  9(b)'s heightened pleading standard applies to

4  negligent misrepresentation claims"); <u>Bosco Legal</u>

5  <u>Servs. v. Hiscox Inc.</u>, No. EDCV 18-48-GW(SHKx), 2018

6  U.S. Dist. LEXIS 99384, at *21 (C.D. Cal. June 11,

7  2018) (citations omitted) ("It is well-established in

8  the Ninth Circuit that both claims for fraud and

9  negligent misrepresentation must meet Rule 9(b)'s

10 particularity requirements.").[13]  As discussed below,

11 Plaintiff fails to satisfy this federal pleading

12 standard.  Because the claim fails under either state's

13 laws, the Court need not engage in a choice of law

14 analysis for this claim.

15     c.  *Deceit/Negligent Misrepresentation*

16     FRCP 9(b) requires that when "alleging fraud or

17 mistake, a party must state with particularity the

18 circumstances constituting fraud or mistake."

19 Plaintiff alleges that in or around early November

20

21     [13] Some Ninth Circuit courts are divided as to whether Rule
22 9(b) applies to negligent misrepresentation claims generally, but
   courts consistently have found that where the plaintiff's claim
23 sounds in fraud, Rule 9(b) applies.  <u>See</u> <u>McNeil v. Wells Fargo</u>
   <u>Bank, N.A.</u>, No. 13-5519 SC, 2014 U.S. Dist. LEXIS 165464, at * 3
24 (N.D. Cal. Nov. 25, 2014) (citing <u>Vess v. Ciba-Geigy Corp. USA</u>,
   317 F.3d 1097, 1103 (9th Cir. 2003))(holding that a claim "sounds
25 in fraud where a plaintiff 'allege[s] a unified course of
   fraudulent conduct and rel[ies] entirely on that course of
26 conduct as the basis of a claim.'").  The FAC alleges that
   Defendants acted knowingly and with oppression, fraud, or malice,
27 and relies on this as the basis of the negligent
   misrepresentation claim.  FAC ¶¶ 25-27.  Thus, this claim is
28 analyzed under Rule 9(b) per California law.

2017, "Defendants" provided Plaintiff by e-mail an
Excel spreadsheet indicating the amounts Defendant
collected on Plaintiff's samples for September 2017,
and that Defendants falsified the amounts in the
spreadsheet.[14]  <u>Id.</u> ¶¶ 18-20.  This conclusory
allegation will not pass muster under Rule 9(b).  <u>See</u>
<u>Midamerica C2L, Inc. v. Siemens Energy, Inc.</u>, No.
6:17-cv-171-Orl-40KRS, 2017 U.S. Dist. LEXIS 53595, at
*9 (M.D. Fla. Apr. 7, 2017) ("[T]he plaintiff must
identify . . . the time, place, and person responsible
for each misrepresentation"); <u>Saldate v. Wilshire</u>
<u>Credit Corp.</u>, 686 F. Supp. 2d 1051, 1065 (E.D. Cal.
2010) (citations omitted) ("[I]n a fraud action against
a corporation, a plaintiff must "allege the names of
the persons who made the allegedly fraudulent
representations, their authority to speak, to whom they
spoke, what they said or wrote, and when it was said or
written.").  Plaintiff does not identify who is
responsible for the misrepresentations, from which
email address the falsified spreadsheet was sent, or
any other such relevant information.  Thus, Plaintiff's
allegations regarding Defendants' false representations
fail to adequately state a claim under the Rule 9(b)

---

[14] For example, Plaintiff alleges that "[i]n some cases, a
$19,000 payment turned into 0 or $5,000 turned into $500." <u>FAC</u> ¶
20.  Plaintiff's independent investigations show that "there were
many payments of twenty-thousand dollars ($20,000.00) gross per
specimen paid to defendants that were never accounted for or paid
to Plaintiff." <u>Id.</u>

heightened pleading standard.

      d.  *Breach of Implied Contract*[15]

A contract implied in fact exists where "a person performs services at another's request . . . and under circumstances' fairly raising the presumption that the parties understood and intended that compensation was to be paid." Commerce P'ship 8098 Ltd. P'ship, 695 So.2d at 386. Plaintiff alleges Defendants ordered Plaintiff to furnish approximately 11,000 specimens, and Defendants have only paid for 600 specimens. FAC ¶¶ 29-32. These facts sufficiently allege breach of an implied in fact contract.

With respect to Defendants' argument that the claim must be dismissed because Plaintiff fails to allege the absence of an express contract, even if ultimately "the law will not recognize an implied-in-fact contract where an express contract exists," Baron v. Osman, 39 So.3d 449, 451 (Fla. Dist. Ct. App. 2010), the Court is not aware of any Florida authority holding that a plaintiff must affirmatively plead the absence of an express contract in alleging breach of an implied in

---

[15] Defendants argue that it is unclear whether Plaintiff alleges a breach of an implied in fact contract, or breach of an implied of law contract. Mot. at 15:21-23. However, because Plaintiff asserts a breach of an implied in law contract through its unjust enrichment claim, it is apparent to the Court that Plaintiff here asserts a claim for breach of an implied in fact contract. See Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc., 695 So.2d 383 (Fla. Dist. Ct. App. 1997) (citations omitted) (stating that Florida courts synonymously use the term unjust enrichment "[t]o describe the cause of action encompassed by a contract implied in law").

fact contract.   Indeed, at the motion to dismiss stage,
Plaintiff can plead inconsistent claims in the
alternative.   See id. (finding plaintiff's complaint
contained "sufficient allegations to establish the
existence of an express oral contract or, in the
alternative, an implied-in-fact contract.").   Thus, the
Court **DENIES** Defendants' Motion as to this claim.

> e.   *Breach of Oral Contract*

A breach of contract claim requires "(1) a valid
contract; (2) a material breach; and (3) damages."
Friedman v. New York Life Ins. Co., 985 So.2d 56, 58
(Fla. Dist. Ct. App. 2008).   To establish a valid oral
contract, a plaintiff must allege "offer, acceptance,
consideration and sufficient specification of essential
terms." St. Joe Corp. V. McIver, 875 So.2d 375, 381
(Fla. 2004).   Here, Plaintiff fails to allege essential
terms, such as the duration of the contract, the
quantity of specimen Plaintiff was to procure, or the
specific services Plaintiff was to provide.   Further,
Plaintiff pleads inconsistent facts regarding the price
that Defendants were to pay under the contract.[16]   See
Jacksonville Port Authority v. W.R. Johnson

---

[16] Plaintiff incorporates the following inconsistent facts
in its claim for breach of oral contract: "[a]s of August 2017
defendants had paid plaintiff one hundred seventy thousand
dollars ($170,000) for approximately 600 specimens.   This
established an average price/specimen of $283.33 that defendants
promised to pay plaintiff" and "defendants promised to pay
plaintiff 50% of net payment received (less 30% on hospital fees)
and then 50% of the remainder; and from which defendant also
deducted $150.00 per paid sample." FAC ¶¶ 30, 34.

Enterprises, Inc., 624 So.2d 313, 315 (Fla. Dist. Ct.
App. 1993) ("[f]ailure to sufficiently determine
quality, quantity, or price may preclude the finding of
an enforceable agreement."). Thus, Plaintiff failed to
plead the existence of a valid contract as is required
for a breach of oral contract claim, and the Court
**GRANTS** Defendants' Motion as to this claim.

> f.   *Common Counts*

Plaintiff alleges common counts, in an action for
*quantum valebant* for the value of the goods provided or
for *indebitatus assumpsit* for the balance due on
specimens Plaintiff furnished to Defendants.  The Court
notes that these are two of the common counts in
general assumpsit, which "have now become practically
obsolete." Matthews v. Matthews, 222 So.2d 282, 285
(Fla. Dist. Ct. App. 2nd 1969).  To the extent courts
still recognize such claims, here they are dismissed
because they are repetitive of Plaintiff's unjust
enrichment claim, in which Plaintiff alleges the same
essential facts and seeks the same relief. See
Reliastar Life Ins. Co. v. Kiel, No.
3:08-CV-751-J-34MCR, 2010 WL 11507705, at *3 n.2 (M.D.
Fla. July 29, 2010) (quoting Moore Handley, Inc. v.
Major Realty Corp., 340 So.2d 1238, 1239 (Fla. Dist.
Ct. App. 1976)) ("The outcome is the same, whether one
labels the claim 'with the terminology of the old
common count for money had and received (indebitatus
assumpsit) or the more current restitution to prevent

1  unjust enrichment.'"). Thus, the Court **GRANTS**

2  Defendants' Motion as to common counts.

3         g.  *Unjust Enrichment*

4         "A claim for unjust enrichment is equitable in

5  nature, and thus, is not available when there is an

6  adequate legal remedy." Reliastar Life Ins. Co., 2010

7  WL 11507705, at *3. Here, rather than plead in the

8  alternative, Plaintiff incorporates its claim for

9  breach of an express oral contract into its claim for

10 unjust enrichment. See FAC ¶ 42; Spring Air Int'l, LLC

11 v. R.T.G Furniture Corp., No. 8:10-cv-1200-T-33TGW,

12 2010 U.S. Dist. LEXIS 114490, at *6-7 (M.D. Fla. Oct.

13 19, 2010) (dismissing plaintiff's unjust enrichment

14 claim because plaintiff incorporated the allegations of

15 an express contract into its claim for unjust

16 enrichment). As a result, the Court **GRANTS** Defendants'

17 Motion as to the unjust enrichment claim.

18        h.  *Accounting*

19        Plaintiff summarily states it is entitled to an

20 *accounting of all the monies and property defendants*

21 obtained and realized from the specimens. Id. ¶ 45.

22 In Florida, "an accounting is best understood as a

23 remedy for a cause of action, not as a cause of action

24 in its own right." Zaki Kulaibee Establishment v.

25 McFliker, 771 F.3d 1301, 1310 n.21 (11th Cir. 2014).

26 Where a complaint alleges claims for breach of contract

27 and accounting regarding the same facts, as is the case

28 here, both causes of action can only be maintained "by

1 | showing 'that the accounts between the parties' are of
2 | such a complicated nature that only a court of equity
3 | can satisfactorily unravel them.'" <u>Managed Care</u>
4 | <u>Solutions, Inc. v. Essent Healthcare, Inc.</u>, 694 F.
5 | Supp. 2d 1275, 1279 (S.D. Fla. 2010)(quoting <u>Dairy</u>
6 | <u>Queen, Inc. V. Wood</u>, 369 U.S. 469, 478 (1962)).  Here,
7 | Plaintiff does not argue the accounts are so
8 | complicated as to require an accounting.  Thus, the
9 | Court **GRANTS** Defendants' Motion regarding this claim.

10 |       i.   *Leave to Amend*

11 | A plaintiff may amend the complaint once "as a
12 | matter of course" before a responsive pleading is
13 | served.  Fed. R. Civ. P. 15(a).  After that, the "party
14 | may amend the party's pleading only by leave of court
15 | or by written consent of the adverse party and leave
16 | shall be freely given when justice so requires."  <u>Id.</u>
17 | "Rule 15's policy of favoring amendments to pleadings
18 | should be applied with 'extreme liberality.'"  <u>United</u>
19 | <u>States v. Webb</u>, 655 F.2d 977, 979 (9th Cir. 1981)
20 | (internal quotations and citation omitted).

21 | While Plaintiff previously amended its Complaint,
22 | this was not in response to the Court finding the
23 | Complaint was deficient.  Because the biggest issues
24 | with Plaintiff's allegations are that they do not
25 | contain sufficient facts or do not clarify that they
26 | are being pleaded in the alternative, there is a strong
27 | chance that amendment will cure these deficiencies.
28 | Accordingly, the Court **GRANTS LEAVE TO AMEND.**

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS**
Defendants' Motion to Dismiss for Lack of Jurisdiction
as to Dawoud and **DENIES** Defendants' Motion to Dismiss
for Lack of Jurisdiction as to Defendants Outreach,
Health, and Bio Labs.  The Court also **DENIES**
Plaintiff's request for judicial discovery as to
Dawoud, and **DENIES AS MOOT** Plaintiff's request for
judicial discovery as to Defendants Outreach, Health,
and Bio Labs.  The Court **DENIES** Defendants' Motion to
Dismiss for failure to state a claim as to Plaintiff's
breach of implied contract claim.  Further, the Court
**GRANTS** Defendants' Motion to Dismiss for failure to
state a claim as to the following: (1) deceit/negligent
misrepresentation , (2) breach of oral contract, (3)
common counts, (4) unjust enrichment, and (5)
accounting.  Plaintiff is granted 21 days leave to file
an Amended Complaint.

**IT IS SO ORDERED.**


DATED: November 16, 2018      s/ RONALD S.W. LEW
                              **HONORABLE RONALD S.W. LEW**
                              Senior U.S. District Judge