JEFFREY AARON COHEN, SBN 186420
LAW OFFICE OF JEFFREY A. COHEN
15338 Central Avenue
Chino CA 91710
Telephone : 310-650-6015
Email: jac@cohen-lawfirm.com

Attorney for plaintiff
NOCHER ENTERPRISES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOCHER ENTERPRISES, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>AVENTUS OUTREACH, LLC, a Florida limited liability company; OLIVER DAWOUD, an individual; AVENTUS BIO LABS, INC., a Florida corporation; and AVENTUS HEALTH, LLC, a Florida limited liability company,<br><br>Defendants. | Case No.: 2:18-cv-3897 RSWL (JEMx)<br><br>**SECOND-AMENDED COMPLAINT** |

Plaintiff alleges:

**PARTIES AND CAPACITIES**

1. At all times relevant hereto plaintiff NOCHER ENTERPRISES, INC. ("plaintiff") is and was a California corporation doing business in the City of Los Angeles, California.

2. At all times relevant hereto defendant AVENTUS OUTREACH, LLC is and was a Florida limited liability company ("Aventus Outreach" or "defendant"), who sought plaintiff's products and services.

3. At all times relevant hereto defendant AVENTUS BIO LABS, INC. is and was a Florida corporation ("Bio Labs" or "defendant"), who sought plaintiff's products and services.

4. At all times relevant hereto defendant AVENTUS HEALTH, LLC is and was a Florida limited liability company ("Aventus Health" or "defendant"), who sought plaintiff's products and services.

5. Plaintiff is informed and believes that OLIVER DAWOUD ("Oliver Dawoud") is, and at all times relevant hereto was, an individual and the principal/owner of Aventus Outreach, and the operator, manager, agent and authorized representative of Aventus Outreach, Aventus Health and Bio Labs, and acted in these capacities at all times relevant hereto.

6. Defendants Aventus Health, Aventus Outreach, and Bio Labs are collectively referred to as the "Aventus Defendants".

7. Plaintiff is further informed and believes that the Aventus Defendants were separately organized according to the type of provider-source and/or payor source, whether it was in-network or out-of-network (which will be subject to discovery). Nevertheless, at all times relevant hereto the defendants held themselves out as one and same entity acting in concert with each other vis-à-vis plaintiff for purposes of their business dealings. Plaintiff is informed and believes that the Aventus Defendants are alter egos of each other for the purposes of carrying deceit and injustices to plaintiff. At all times relevant hereto each of the Aventus Defendants acted under the banner and trade name of Aventus Biolabs a/k/a AventusBiolabs.com.

## JURISDICTION AND VENUE

8. This court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332 following defendants' removal of this action from State Court pursuant to 28 U.S.C. § 1441(a).

9. Plaintiff is a California corporation and has its primary base of

business here in California. Plaintiff is a citizen of California. Whereas, plaintiff is informed and believes that each of the Aventus Defendants are citizens of Florida. In addition, plaintiff claim for compensatory damages is for $2,946,666.67, and its claim for punitive damages is for $3,000,000.00. The amount in controversy therefore exceeds $75,000.00 and diversity jurisdiction is proper.

10. Furthermore, this Court is in the judicial district and division embracing the place of performance of the contract at issue and where the operative facts occurred (pleaded in detail below). This is also the district and division where the State Court Action was brought. For these reasons personal jurisdiction and venue lie in this district and division.

**MATERIAL FACTS AS TO ALL CAUSES OF ACTION**

11. The Aventus Defendants typically avoided conducting business with California entities due to the perceived laws of the state. However, defendants made an exception with Nocher Enterprises because of the anticipated large volume of business it expected to generate for the Aventus Entities—knowing full well that it was engaging a California business entity who had special relationships with California-based providers.

12. With this in mind, on or about April 19, 2017, the Aventus Defendants invited plaintiff to enroll its accounts with defendants for the sale and service of specimens as ordered by defendants for defendants' laboratories. At that time defendants promised to pay plaintiff for plaintiff's provided specimens based on defendants' collections, as follows: defendants promised to pay plaintiff 50% of net payment received (less 30% on hospital fees when billing through a hospital, otherwise there was no hospital fee when billing out of network through the lab) and then 50% of the remainder; and from which defendant also deducted $150.00 per paid sample. Defendants

promised to account for their collections in the form of, inter alia, summarized reports indicating the amount collected per claim, provider name, and claim date. Defendants also were to provide plaintiff access to defendants' online portal to verify collection and other data. Plaintiff, in reliance on defendants' promises, started delivering the samples to defendants.

13. Furthermore, at all times relevant hereto the Aventus Defendants knew that the primary and majority source of the specimens that plaintiff would provide, and did provide, to defendants were from California providers, including but not limited to providers such as hospitals, doctors, and rehabilitation (drug and treatment centers).

14. For example, on or about May 25, 2017, defendant engaged in e-mail communications entitled "CA STATE CLIENTS - SPECIMEN ID ISSUES" and concluded with the statement, "I will be happy to keep you updated if I notice any other issues with respect to CA clients."

15. To be sure, California was the primary business-source Aventus targeted when it engaged Nocher Enterprises, Inc. to provide the samples. Indeed, the great majority (approximately 85%) of the providers from which plaintiff procured the thousands of samples for the Aventus Defendants were from California, to-wit, the following entities :

a. Pax House
b. Valley Restoration Center
c. Next Step Recovery
d. South Coast Counseling
e. Landmark Recovery
f. Crossroads Transitional
g. CA Prime Recovery
h. Fresh Start of CA Detox
i. Bridges to Life Detox

j. Forefront Beverly Hills
k. IMAC Medical Group
l. Resilient Care Center
m. Rancho Milagro Recovery
n. New Existence
o. New Origins
p. Pacific Pain Clinic
q. Balboa Surgery Center/Pain Management Inc.
r. Valley Detox
s. Chandler Treatment
t. Playa House; and
u. Seacliff Recovery.

16. The Aventus Defendants, in turn, systematically delivered the necessary supplies and equipment for the samples directly to the California entities as indicated by the medical necessity forms.

17. As of August 2017, the defendants had paid plaintiff one hundred seventy thousand dollars ($170,000.00) for approximately 600 specimens. During that time frame defendants had been stalling plaintiff on further payments, and failed and refused to provide plaintiff the reports of the collections on the specimens. Defendants also denied plaintiff access to defendants' online portal to verify collection information.

18. On November 27, 2017 at 1:35 pm, Pacific Standard Time, Oliver Dawoud, via Oliver Dawoud's email address of oliver@aventusbiolabs.com, and in response to plaintiff's repeated requests for payment and an accounting, emailed plaintiff's representative Jamie Nocher at Jamie Nocher's email address jamie@pushstartllc.com, spreadsheets and reports on behalf of all Aventus Defendants that were purportedly the amount of collections made by defendants for the months of September and October 2017 (hereafter said

email and the attachments are referred to as the "November 27th Email and Attachments, respectively". .

19. The subject line of the November27th Email is "Sept/Oct/Missing Docs Report", and the content of this email states:

> "*Here is all the reports. The most accurate with up to date claim overpayments and any claw backs by insurances*. I have included the missing doctor reports and the September as well the total commission is still under the amount that was spent on cogs. It has all been broken-down in each report. These once again are the most accurate reports if there are any claims in question please provide the EOB and I will investigate. You need to understand that there are claw backs and over payments that are updated and if you provide me with specific ones that you are in question I can provide you with the information of either overpayment or claw back. Which 99 percent of the time is the case because they don't update that. ONCE Again *These are the most ACCURATE Report*. Thank you." (Emphasis added.)

20. Upon review of the November 27th Email and Attachments plaintiff learned that defendants had falsified the Attachments therein as defendants' representatives had also simultaneously or nearly simultaneously sent the same spreadsheet (listing the same providers and samples) but bearing differing numerical collection and other data. Upon further inspection plaintiff learned that defendants had materially falsified the amounts collected as zero or nearly zero to justify not paying plaintiff any money for the samples, whereas the truth was that defendants had collection substantial sums of money on the samples plaintiff provided.

21. Specifically and by way of example, throughout the reports identical claim ID numbers and claim dates were listed but have two drastically different reimbursements with no correlation. In some cases a

$19,000 payment turned into 0 or $5,000 turned into $500[1]. In addition, based on plaintiff's independent investigations, there were many payments of twenty-thousand dollars ($20,000.00) gross per specimen paid to defendants that were never accounted for or paid to plaintiff. (Plaintiff has been unable to directly verify the amount from defendants due to defendants' falsification of reports, but which will be subject to discovery).

22. By that time it was apparent to plaintiff that defendants had no intention of paying for the unpaid 10,400 specimens and were lying to plaintiff.

23. Defendants also refused to make any further payments to plaintiff on the false grounds that defendants had already paid plaintiff and/or that plaintiff was not entitled to payment.

24. Plaintiff is informed that defendants have collected millions of dollars from the 10,400 specimens plaintiff provided and for which remain unpaid. Whereas, plaintiff has provided and furnished defendants approximately 11,000 specimens for which defendants have paid only for 600 specimens. Based on the payments made for the initial 600 specimens, plaintiff estimates that defendants owe plaintiff the balance due of $2,946,666.67.

## FIRST CAUSE OF ACTION FOR DECEIT/NEGLIGENT MISREPRESENTATION (AGAINST ALL DEFENDANTS)

25. Plaintiff incorporates herein the allegations of paragraphs 1-24.

26. In making the false representations to plaintiff in the November 27th Email and Attachments, and the false representations concerning payment

[1] Disclosure of specific claim numbers and claims will be made subject to a HIPAA-compliant protective order.

for the specimens, and in making the false representations of account in order to deny payment, defendants acted knowingly and without regard to the truth in dealing with plaintiff. In so doing, defendants also acted without reasonable grounds to believe the truth of the alleged inability to pay plaintiff due to defendants having not been paid on the specimens. Whereas, plaintiff was ignorant of defendants' nefarious intentions and action when sending further and thousands of specimens to defendants, and acted in justifiable reliance thereon in sending those specimens.

27. As a result thereof plaintiff has been damaged $2,946,666.67.

28. Defendants acted with oppression, fraud or malice in this regard for which plaintiff is entitled to an additional award of punitive damages in the amount of $3,000,000.00.

**SECOND CAUSE OF ACTION FOR**
**BREACH OF IMPLIED IN FACT CONTRACT**
**(AGAINST ALL DEFENDANTS)**

29. Plaintiff incorporates herein the allegations of paragraphs 1-24.

30. On or about April 19, 2017, plaintiff enrolled an account with defendants for the sale of specimens as ordered by defendants for defendants' laboratory. At that time and as indicated, plaintiff and defendants entered into a contract whereby defendants promised to pay plaintiff for plaintiff's provided specimens based on defendants' collections, as follows: defendants promised to pay plaintiff 50% of net payment received (less 30% on hospital fees when billing through a hospital, otherwise there was no hospital fee when billing out of network through the lab) and then 50% of the remainder; and from which defendant also deducted $150.00 per paid sample.

31. Defendants promised to account for their collections in the form of, inter alia, summarized reports indicating the amount collected per claim, provider name, and claim date. Defendants also were to provide plaintiff

access to defendants' online portal to verify collection and other data. Plaintiff, in reliance on defendants' promises, started delivering the samples to defendants.

32. As of August 2017 defendants had paid plaintiff one hundred seventy thousand dollars ($170,000.00) for approximately 600 specimens of 11,000 provided specimens. Based upon said payments and past performance, and upon plaintiff's investigation and estimation, defendants owe plaintiff the balance due of $2,946,666.67 for 10,400 unpaid specimens.

33. Plaintiff has performed all obligations to defendants except those obligations plaintiff was prevented or excused from performing.

34. Defendants have breached the contract with plaintiff by failing and refusing to pay plaintiff for the 10,400 specimens, for which damages amount to $2,946,666.67.

**THIRD CAUSE OF ACTION FOR UNJUST ENRICHMENT**
**(AGAINST ALL DEFENDANTS)**

35. Plaintiff incorporates herein the allegations of paragraphs 1-24.

36. In the alternative to the cause of action for breach of implied-in-fact contract, plaintiff hereby pleads this claim for unjust enrichment, also known as breach of implied-in-law contract.

37. Specifically, defendants have been unjustly enriched by taking and receiving the 10,400 specimens on a promise, express or implied, to pay therefor, and for which defendants made millions of dollars and refused to pay plaintiff anything. As a remedy the Court should award plaintiff damages from defendants in an amount of $2,946,666.67, according to proof.

///
///

WHEREFORE, plaintiff prays for judgment against defendants jointly and severally as follows:

a) for damages in the amount of $2,946,666.67;
b) for punitive damages on the first cause of action in the amount of $3,000,000.00;
c) for cost of suit including attorneys fees as allowed by law;
d) for equitable and general relief; and
e) for such further relief as the Court deems proper.

Dated: December 7, 2018 LAW OFFICE OF JEFFREY A. COHEN

By: **s/*JEFFREY A. COHEN***
Jeffrey Aaron Cohen

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all causes of action and issues for which a jury is allowed by law.

Dated: December 7, 2018 LAW OFFICE OF JEFFREY A. COHEN

By: **s/*JEFFREY A. COHEN***
Jeffrey Aaron Cohen