MICHAEL R. MATTHIAS (SBN 57728)
*mmatthias@bakerlaw.com*
JOELLE A. BERLE (SBN 252532)
*jberle@bakerlaw.com*
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859

MICHAEL S. VITALE (admitted *Pro Hac Vice*)
*mvitale@bakerlaw.com*
**BAKER & HOSTETLER LLP**
2300 SunTrust Center
200 South Orange Avenue
P.O. Box 112
Orlando, FL 32802-0112
Telephone: 407.649.4000
Facsimile: 407.841.0168

*Attorneys for Defendants*
AVENTUS OUTREACH, LLC,
AVENTUS BIO LABS, INC.
and AVENTUS HEALTH, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

NOCHER ENTERPRISES, INC., a California corporation,

Plaintiff,

v.

AVENTUS OUTREACH, LLC, a Florida limited liability company; OLIVER DAWOUD, an individual; AVENTUS BIO LABS, INC., a Florida corporation; and AVENTUS HEALTH, LLC, a Florida limited liability company,

Defendants.

Case No.: 2:18-cv-3897 RSWL (JEMx)

**DEFENDANTS' MOTION TO TRANSFER VENUE AND INCORPORATED MEMORANDUM OF LAW**

Date: May 14, 2019
Time: 10:00 a.m.
Courtroom: TBD

Action Filed: March 5, 2018

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on May 14, 2019 at 10:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Ronald S.W. Lew, at 350 W. 1st Street, Suite 4311, Los Angeles, CA 90012 (courtroom location to be noticed once assigned), Defendants Aventus Outreach, LLC ("Outreach"), Aventus Bio Labs, Inc. and Aventus Health, LLC ("Health"), (collectively, "Defendants") shall, and hereby do, move the Court pursuant to 28 U.S.C. § 1404 for an Order transferring this action filed by Nocher Enterprises, Inc., ("Nocher" or "Plaintiff") to the United States District Court, Middle District of Florida, Orlando Division.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, any Reply Memorandum that Defendants may file, the pleadings, records, and papers on file in this action, oral argument of counsel, and upon such other matters as may be presented to the Court prior to or at the hearing on the Motion.

This Motion is made following a conference of counsel pursuant to L.R. 7-3 on November 27, 2018, along with follow-up conferences on February 22 and April 1, 2019.

Dated: April 2, 2019

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Michael R. Matthias*
Michael R. Matthias
Joelle A. Berle

*Attorneys for Defendants*
AVENTUS OUTREACH, LLC,
AVENTUS BIO LABS, INC. and
AVENTUS HEALTH, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. FACTUAL SUMMARY ..... 1
III. PROCEDURAL HISTORY ..... 4
IV. STANDARD OF REVIEW ..... 5
V. ARGUMENT ..... 6
- A. Jurisdiction and Venue in the Middle District of Florida ..... 6
- B. The Alleged Agreement was Negotiated and Performed in Florida. ..... 7
- C. Florida is Most Familiar with the Governing Law At Issue. ..... 8
- D. Plaintiff's Choice of Forum. ..... 8
- E. The Respective Parties' Contacts with the Forum, Ease of Access to Proof, and the Convenience of the Parties and the Witnesses. ..... 9
- F. Florida is a Cheaper Forum to Litigate this Matter. ..... 11
- G. The Relevant Public Policy of the Forum State. ..... 12
- H. The Public Interest Factors and the Interests of Justice Also Counsel in Favor of Transfer. ..... 12

VI. CONCLUSION ..... 13

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*In re Acer Am. Corp.*, 626 F.3d 1252 (Fed. Cir. 2010) .......... 10

*Bussen v. WestPark Capital Fin. Services, LLC*, CV 14-6609 PSG (VBKx), 2014 WL 11512591 (C.D. Cal. Dec. 4, 2014) .......... 6, 8, 11, 12

*Callaway Golf Co. v. Corporate Trade Inc.*, No. CV 09-384 L(POR), 2010 WL 743829 (S.D. Cal. Mar. 1, 2010) .......... 10

*CFTC v. Savage*, 622 F.2d 270 (9th Cir. 1979) .......... 6

*Cohen v. Versatile Studios, Inc.*, No. CV 13-4121 GAF, 2013 WL 12130019 (C.D. Cal. Nov. 15 2013) .......... 9, 10, 13

*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183 (S.D. Cal. 2007) .......... 11

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) .......... 6, 12

*Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp. 2d 1282 (S.D. Fla. 2009) .......... 12

*In re Genentech*, 566 F.3d 1338 (Fed. Cir. 2009) .......... 10

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) .......... 6

*Kannar v. Alticor, Inc.*, No. CV 08-550 MMC, 2009 WL 975426 (N.D. Cal. Apr. 9, 2009) .......... 9

*Metz v. U.S. Life Ins. Co. in the City of N.Y.*, 674 F.Supp.2d 1141 (C.D. Cal. 2009) .......... 6

*Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949 (9th Cir. 1968) .......... 8


Baker & Hostetler LLP
Attorneys at Law
Los Angeles

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) .......... 6

*Wheel Pros, LLC v. Performance Tire*, No. CV 17-0042 PSG,
2017 WL 6017292 (C.D. Cal. Apr. 24, 2017) .......... 9, 10, 11

**Statutes**

28 U.S.C. § 89 .......... 7

28 U.S.C. § 1332 .......... 7

28 U.S.C. § 1391 .......... 7

28 U.S.C. § 1404 .......... 5, 6, 14

**Rules**

Rule 26 .......... 10

Rule 12 .......... 4, 5

**Other Authorities**

Cost of Living Index for Selected U.S. Cities, available at https://www.infoplease.com/business-finance/us-economy-and-federal-budget/cost-living-index-selected-us-cities1 (visited March 31, 2019) .......... 11

Federal Judicial Caseload Statistics 2018, available at https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2018 (visited March 31, 2019) .......... 12

These are the Nation's 27 Most Overworked District Courts, available at https://www.law360.com/articles/1139833/these-are-the-nation-s-27-most-overworked-district-courts (visited March 20, 2019) .......... 12, 13

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a contract-based action between a California plaintiff and three Florida defendants regarding an alleged implied "contract" which, if it was formed, was formed in the State of Florida, and should be litigated in Florida. Based on the negotiation of the purported contract, the remaining claims at issue which have not been dismissed, the law which will be applied to said claims, the location of the parties, witnesses, relevant documents, and other statutory and discretionary factors, Florida has a greater interest in the outcome of this matter. For these reasons, the Defendants ask that the Court transfer this action to the Middle District of Florida, where it should have been filed in the first place.

## II. FACTUAL SUMMARY

The operative Complaint in this matter is Plaintiff's Second Amended Complaint, (Dkt. No. 39, "Complaint"), minus Count I of said Complaint, which has been dismissed with prejudice pursuant to Court Order. (Dkt. No. 49). In it, Nocher alleges that it entered into a purported oral agreement in April of 2017 with the Defendants regarding the testing of medical specimens. (Dkt. No. 39 at ¶ 12). Nocher began providing specimens to one or more of the unidentified "defendants" in reliance upon promises made in exchange for a portion of net payments received. (*Id.*). Nocher alleges that "Defendants" were supposed to provide a spreadsheet listing completed tests and provide access to an unidentified Defendant's online portal to verify these numbers. (*Id.*) For only four (4) months of work, at best, Nocher was paid $170,000.00 by Outreach. (*Id.* at ¶ 17). Nocher claims that these payments were only meant to compensate Nocher for 600 of the 11,000 specimens it allegedly provided to Defendants. (*Id.* at ¶¶ 17, 24). Thus, Nocher claims that "defendants" failed to pay Nocher for 10,400 specimens it purportedly sent to one or more of the Defendants for testing. (*See id.*) The Complaint states that when Nocher demanded further payments, Defendants told Nocher that they had already paid

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Nocher for all its services and that it was not entitled to further payment. (*Id.* at ¶ 23). Nowhere in the Complaint does Nocher allege that the amount of money it was paid was unreasonable or outside of the fair market value for the services provided. (*See id.* at pp. 1-3.) However, Nocher claims almost $2.95 million in actual damages. (*Id.* at ¶¶ 24, 27-28, 29-30, 35, 37).

By September of 2017, Nocher alleges that one or more unidentified Defendants began stalling on additional payments and refused Nocher access to the online portal. (*Id.*) An unidentified group of "defendants" also allegedly blocked Nocher's access to the online portal. (*Id.* at ¶ 17).

Allegedly, all three Defendants agreed to pay Nocher for specimens Nocher provided to Defendants for testing. (*Id.* at ¶ 12). This is false, however, as Defendant Aventus Bio Labs, Inc. is a defunct corporation which never did business with anyone, let alone Nocher. Specifically, Defendant Aventus Bio Labs, Inc. ("Bio Labs") is a dissolved corporation which has never done business of any kind, let alone in the State of California. (Declaration of Nagi Youssef, M.D.[1] ("Youssef Decl."), ¶¶ 5-7). In addition, Bio Labs is no longer an active company and there was no basis to sue it in this lawsuit. (Youssef Decl., ¶ 3, 11).

In fact, none of the three Defendants are California residents, and none of the Defendants maintain a place of business, have employees, or regularly conduct business in the State of California. The alleged agreement was not negotiated or formed in California; none of the laboratory specimen testing was performed in California; and payment for the testing was not issued in California. (Declaration of Oliver Dawoud ("Dawoud Decl."), ¶¶ 22-28). Further, all payments to Nocher were transmitted to Nocher by check out of Florida, from the account of Outreach, a Florida limited liability company. (*Id.* at ¶¶ 29-30).

[1] In support of their Motion, Defendants resubmit to the Court the Declarations of Dr. Oliver Dawoud and Nagi Youssef, as Exhibits "1" and "2", respectively, which were originally submitted in support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. (*See* Dkt. Nos. 17-1 and 17-2). For ease of reference, said Declarations are refiled with this Motion and incorporated herein by reference.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Oliver Dawoud, the principal of Outreach and the individual to whom various statements are attributed in the Complaint, is an individual and resident of the State of Florida who has never owned a business in the State of California. (Dawoud Decl., ¶¶ 4, 37). He does not own any property in California, does not engage in any business activity in California, and has little, if any, contact with the State. (Dawoud Decl., ¶¶ 35, 39).

Defendants Aventus Health, LLC ("Health") and Aventus Outreach, LLC ("Outreach") are Florida limited liability companies that each have their principal place of business in Florida. (Youssef Decl., ¶ 12; Dawoud Decl., ¶ 3). At all times material to the facts giving rise to this lawsuit, all of the members of both entities were Florida citizens.[2] (Youssef Decl., ¶ 13; Dawoud Decl., ¶ 4). Outreach is the only entity that entered into negotiations with Nocher, and Health performed some of the testing of the medical specimens which Nocher arranged to be sent to Florida for testing. (Dawoud Decl., ¶¶ 18-21; Youssef Decl., ¶ 22). Neither Health nor Outreach own property or lease space in California, advertise in California, operate a testing laboratory in California, or regularly conduct business in the State. (Youssef Decl., ¶¶ 16, 18, 21-23; Dawoud Decl., ¶¶ 9-10, 12, 22-23). In addition, neither Health nor Outreach currently conduct any business in California. (Youssef Decl., ¶ 16; Dawoud Decl., ¶ 9).

During the course of the parties' relationship, Nocher attended three meetings with representatives of Outreach in the State of Florida. (Dawoud Decl., ¶ 20). No meetings were held in California. (*Id.*) While Defendants vigorously dispute the allegations of the Complaint, all of the alleged statements attributed to Defendants, if they took place, originated out of the State of Florida. (Dawoud Decl., ¶ 20). Likewise, if any agreement or contract was made between the parties, it was made in Florida, resulting from the meetings and negotiations that took place in Florida.

---

[2] Health and Outreach are in the process of undergoing corporate reorganizations, which were recently commenced and were not underway when the facts giving rise to the lawsuit occurred, nor when this lawsuit was filed.

(Dawoud Decl., ¶ 18). In addition, most of the testing of the specimens took place in Florida, not California laboratories, with the exception of some samples that were sent to a reference laboratory in Georgia. (Dawoud Decl., ¶¶ 22-23). Importantly, all of the specimens tested by Defendants were stored in Florida, with the results stored and uploaded onto Florida servers where they could be accessed online. (Dawoud Decl., ¶¶ 26, 28; Youssef Decl., ¶¶ 24, 26). All payments to Nocher were also transmitted from Florida accounts and sent out of the State of Florida to Nocher. (Dawoud Decl., ¶ 30). Finally, with the Court's ruling on the most recent Motion to Dismiss directed to the Complaint, the only claims left at issue in this lawsuit are governed by Florida law. (*See* Dkt. No. 38 (applying Florida law to the contract-based claims) and Dkt. No. 49 (dismissing the remaining tort claims)).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## III. PROCEDURAL HISTORY

On March 5, 2018, Plaintiff filed a state court action against Outreach, Dawoud and Does 1-20, inclusive. Plaintiff filed an amendment to its Complaint in state court on March 21, 2018, naming Bio Labs as Defendant Doe 1. Plaintiff filed a second Amendment to its Complaint on April 26, 2018 in state court, naming Health as Defendant Doe 2.

In May of 2018, Defendants removed this action to this Court by filing a timely Notice of Removal. (Dkt. No. 1.) Defendants then obtained a thirty (30) day enlargement of time to respond to the Complaint. After a good faith conference regarding Defendants' prospective Motion to Dismiss the initial complaint, Nocher filed a "First Amended" complaint (which was essentially Nocher's *fourth* complaint) to purportedly clarify the causes of action against Defendants. Defendants filed motions to dismiss the First Amended Complaint based on Rules 12(b)(2) and 12(b)(6). (Dkt. Nos. 17, 18).

On November 16, 2018, the Court entered an omnibus order on the motions to dismiss. In pertinent part, the Court dismissed five of the six causes of action for failure to state a claim, and dismissed former Defendant Dawoud for lack of personal

jurisdiction. (Dkt. No. 38). Importantly, the Order also ruled that Florida substantive law applied to any contract-based or quasi-contractual action in this lawsuit. (*Id.* at 22). The Court declined to address what state's substantive law applied to tort claims in this dispute, as it had dismissed all tort claims with leave to amend due to, *inter alia*, Nocher's failure to plead fraud with particularity. (*Id.* at 23).

On December 7, 2018, Nocher filed its Second Amended Complaint, which is essentially the *fifth* complaint, and now the operative Complaint in this action. (Dkt. No. 39). The Second Amended Complaint dropped Dawoud as a defendant,[3] and does not attempt to reassert the dismissed causes of action for common counts, accounting, or breach of oral contract. (*See id.*). After hearing a motion to dismiss directed to this Complaint, the Court dismissed Count I, the only remaining tort claim, with prejudice. (Dkt. No. 49, p. 14). This leaves only the Breach of Implied Contract and Unjust Enrichment claims for discovery, both of which are governed by Florida law. (*Id.*)

## IV. STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). Section 1404(a) explicitly defines three factors—the convenience of the parties, the convenience of witnesses, and the interest of justice—and the Ninth Circuit has explained that district courts may consider factors used in the *forum non conveniens* context: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two

[3] In a supplemental good faith conference with Plaintiff's counsel on December 24, 2018, Nocher confirmed that its Second Amended Complaint dropped Dawoud as a defendant, and merely listed him in the case caption due to Plaintiff's understanding of a California state court rule that does not allow parties to a lawsuit to change the case caption during the pendency of a case.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof, as well as (9) the relevant public policy of the forum state. *E.g.*, *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

The district court may also consider factors such as (10) relative court congestion, (11) "the local interest in having localized controversies decided at home," and (12) "the unfairness of burdening citizens in an unrelated forum with jury duty." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

The burden is on the moving party to show that transfer is appropriate. *See CFTC v. Savage*, 622 F.2d 270, 279 (9th Cir. 1979). Overall, § 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation and internal quotation marks omitted); *Bussen v. WestPark Capital Fin. Services, LLC*, CV 14-6609 PSG (VBKx), 2014 WL 11512591, at *2 (C.D. Cal. Dec. 4, 2014).

## V. ARGUMENT

### A. Jurisdiction and Venue in the Middle District of Florida

To establish that an action "might have been brought" in the district to which transfer is sought under § 1404(a), the moving party must first show that subject matter jurisdiction, personal jurisdiction, and venue would have been proper if the plaintiff had originally filed the action in the district to which transfer is sought. *See, e.g., Metz v. U.S. Life Ins. Co. in the City of N.Y.*, 674 F.Supp.2d 1141, 1145 (C.D. Cal. 2009). First, Defendants note that this matter is easily satisfied, as Defendants effectively stipulated to jurisdiction and venue in the Middle District of Florida by virtue of filing their Motion to Dismiss for Lack of Personal Jurisdiction. (*See* Dkt. No. 17).

In any event, subject matter jurisdiction is satisfied based on diversity of citizenship, 28 U.S.C. § 1332, because Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds $75,000.00. Defendants removed this action to this Court based on these grounds, and Nocher did not contest such removal. (*See generally* Dkt. No. 1). Defendants are subject to personal jurisdiction and venue in Florida due to being citizens of that state and having their principal place of business in Seminole County, Florida, which is within the territorial confines of the Middle District of Florida. *See* 28 U.S.C. § 89(b); Dkt. Nos. 17, 17-1 & 17-2. Lastly, venue is also proper in the Middle District of Florida because it is where the representations about the alleged contract (and meetings regarding the formation of the contract) that form the core of this lawsuit took place. *See* 28 U.S.C. § 1391(b)(2) (venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"). Thus, this action might have been brought in the Middle District of Florida.

**B. <u>The Alleged Agreement was Negotiated and Performed in Florida.</u>**

The first factor the Court must consider is the location where the relevant agreements were negotiated and executed. While Defendants dispute the existence of a contract between the parties, if one exists, it was formed primarily in Florida. Negotiation for the contract began with a series of in-person meetings whereby representatives of Nocher traveled to Florida to meet with representatives of Outreach. Specifically, Nocher attended three meetings with representatives of Outreach in the State of Florida. (Dawoud Decl., ¶ 20). No meetings were held in California. (*Id.*) The remaining negotiations took place online or over the phone. No written agreement was ever executed. Thus, if any agreement or contract was made between the parties, it was made in Florida, resulting from the meetings and negotiations that took place in Florida. (Dawoud Decl., ¶ 18).

In terms of contractual performance, this Court has already held that the "circumstances indicate that the parties expected most of these obligations [under the



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

alleged contract] to be performed in Florida." (Dkt. No. 38, p. 20). The Court received ample evidence that the majority of sample testing, results reporting, and payment originated from Defendants' offices in Florida, and the above conclusion by the Court is no longer in dispute. Thus, this factor weighs heavily in favor of transfer to the Middle District of Florida.

**C. <u>Florida is Most Familiar with the Governing Law At Issue.</u>**

The only remaining claims left in this action are (1) breach of implied contract and (2) unjust enrichment. (Cf. Dkt. Nos. 39, 49). The Court has already held that Florida law applies to these claims. (Dkt. No. 38, p. 22). While Defendants do not suggest that this Court lacks the ability to discern and apply Florida law, it cannot reasonably be disputed that federal courts sitting in Florida are more familiar with Florida law than this Court. *See, e.g., Bussen*, 2014 WL 11512591, at *5 ("New Mexico is the location where the Contract was both negotiated and executed. If issues of contract interpretation arise ... New Mexico law would apply and such law would be more familiar to a federal court sitting in New Mexico"). In sum, this factor weighs entirely in favor of transfer.

**D. <u>Plaintiff's Choice of Forum.</u>**

Defendants concede that Nocher is a California corporation and that this Court is Nocher's original choice of forum. However, "if the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." *Bussen*, 2014 WL 11512591 at *4 (quoting *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968)).

Here, only minimal weight should be given to this factor. In addition to the facts surrounding the negotiation of the contract listed above, Florida was primarily the place of performance of the contract. Again, the testing of the specimens took place in Florida, not California laboratories, with the exception of some samples that were sent to reference laboratories. (Dawoud Decl., ¶¶ 22-23). All of the specimens

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

tested by Defendants were stored in Florida, with the results stored and uploaded onto Florida servers where they could be accessed online. (Dawoud Decl., ¶¶ 26, 28; Youssef Decl., ¶¶ 24, 26). The alleged lockout of the online portal occurred in Florida, which also weighs in favor of transfer. *See Cohen v. Versatile Studios, Inc.*, No. CV 13-4121 GAF (MANx), 2013 WL 12130019 (C.D. Cal. Nov. 15 2013) (issues related to problems with database weighed in favor of transfer). Finally, all payments to Nocher were also transmitted from Florida accounts and sent out of the State of Florida to Nocher. (Dawoud Decl., ¶ 30). As Plaintiff cannot identify many pertinent operative facts that occurred in this District, this factor should be given minimal weight.

**E. <u>The Respective Parties' Contacts with the Forum, Ease of Access to Proof, and the Convenience of the Parties and the Witnesses.</u>**

This case involves a suit by a small, closely-held California corporation against three Florida companies. As the Declarations of Oliver Dawoud and Nagi Youssef make clear, the Defendants had minimal contact with the State of California during the parties' relationship, and that contact has lessened since that time. (*See* Youssef Decl. at pp. 2-5; Dawoud Decl. pp. 2-4). While Nocher is a California corporation, and therefore "at home" in this forum, it is telling that Nocher chose to travel to Florida several times in connection with the negotiation and performance of the alleged contract, while the Defendants did not travel to California. Because the Middle District of Florida was the place where negotiation, marketing, testing, and payment decisions took place, this factor weighs in favor of transfer. *See Wheel Pros, LLC v. Performance Tire*, No. CV 17-0042 PSG (AJWx), 2017 WL 6017292, at *10 (C.D. Cal. Apr. 24, 2017) (citing *Kannar v. Alticor, Inc.*, No. CV 08-550 MMC, 2009 WL 975426, at *4 (N.D. Cal. Apr. 9, 2009)).

In addition, the trial of this action in the Middle District of Florida would be much more convenient for the parties and the witnesses. Three of the four parties at issue in this action are headquartered in the Middle District of Florida. None of the



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Defendants do business in California. While Defendants do not know at this time how much business Nocher transacts in Florida, it is significant that Nocher affirmatively sought out and eventually chose to transact business in Florida for the facts and circumstances at issue in this case.

As noted in the parties' Rule 26 disclosures, most of the witnesses and categories of documents are also housed in the State of Florida. (*See* Parties Rule 26(f) Disclosures, attached hereto as Composite Exhibit "3"). This makes inherent sense, as even the Court has noted that the parties expected most of the obligations under the alleged contract were to be performed in Florida. (Dkt. No. 38, p. 20). "The place where the defendant's documents are kept weighs in favor of transfer to that location." *Wheel Pros*, 2017 WL 6017292, at *10 (quoting *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)); *see also In re Acer Am. Corp*., 626 F.3d 1252, 1256 (Fed. Cir. 2010) (explaining that a corporation's relevant material is generally located at its headquarters). Likewise, most of the facts giving rise to this lawsuit occurred in Florida while Dawoud, Dr. Youssef, and the Defendants were living there. Defendants' reference laboratory in Georgia is also much closer to the Middle District of Florida than it is to California. The availability of compulsory process is an important factor in the transfer analysis, as a subpoena to non-party more than 100 miles away may be quashed if that person would incur substantial expense to appear. *E.g., Cohen*, 2013 WL 12130019, at *7 (fact that percipient witnesses could be unavailable for trial weighs in favor of transfer).

Further, the most important witness in the case appears to be Dawoud, who is the alleged author of emails and maker of several alleged statements attributed to him in the Complaint. Dawoud is no longer a party to this action, yet his testimony is still crucial to the claims and defenses at issue. Where the most important witness resides in the district where transfer is requested, this factor weighs heavily in favor of transfer. *See Bussen*, 2014 WL 1152591, at *4 (citing *Callaway Golf Co. v.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Corporate Trade Inc.*, No. CV 09-384 L(POR), 2010 WL 743829, at *6-7 (S.D. Cal. Mar. 1, 2010).

Finally, while trial in Florida certainly presents more of a burden than trial in California for counsel of record for Nocher, "the convenience of counsel is irrelevant" to this analysis. *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1195 (S.D. Cal. 2007).

**F. Florida is a Cheaper Forum to Litigate this Matter.**

As alluded to above, it would be significantly less expensive to coordinate the testimony of witnesses and the transportation of evidence in Florida, where most of the evidence resides, rather than in California. *See Wheel Pros*, 2017 WL 60117292, at *10.

In addition to the fact that Florida, due to its geographic proximity to most of the parties, witnesses, and documents, is a more convenient forum to litigate this case, statistics demonstrate that it is also a less expensive forum to try this case. According to statistics compiled by the federal government and compared by the Council for Community and Economic Research, the cost of living in the Los Angeles metropolitan area is 136.4% of the national average, while the cost of living in Orlando, Florida is 97.8% of the national average. *See, e.g.*, Cost of Living Index for Selected U.S. Cities, available at https://www.infoplease.com/business-finance/us-economy-and-federal-budget/cost-living-index-selected-us-cities1 (visited March 31, 2019). Thus, not only will cost of travel be lessened by the closer geographic proximity of Florida to most of the witnesses, documents, and parties at issue, but the per unit price of goods and services consumed in getting this action to trial will also likely be less. Moreover, because discovery has just begun, with this being the parties' first motion after the Complaint has been answered, the Court will not lose any efficiency by transferring the case now. *Wheel Pros*, 2017 WL 60117292, at *10. For these reasons, this factor weighs in favor of transfer.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**G. <u>The Relevant Public Policy of the Forum State.</u>**

Both Florida and California have a recognized public policy in having the state whose law governs a contract decide controversies surrounding said contract. *Bussen,* 2014 WL 1152591, at *5 (public interest factor favors transfer to New Mexico to interpret communications involving New Mexico-based contract); *Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp. 2d 1282, 1294 (S.D. Fla. 2009) (Florida has an interest in adjudicating a dispute that revolves around an out-of-state corporation engaged in a contract performed in Florida). Because this matter has a greater connection to Florida than California, the public policy of both states is thus served by transfer. Defendants cannot identify any other public policies at issue, as both states recognize claims for breach of contract and quasi-contract. This factor weighs slightly in favor of transfer to the Middle District of Florida.

**H. <u>The Public Interest Factors and the Interests of Justice Also Counsel in Favor of Transfer.</u>**

Although not required to exercise its sound discretion, the Court may -- and Defendants submit that it would be helpful to -- consider the public interest factors normally considered in *forum non conveniens* cases. These factors are (10) relative court congestion, (11) "the local interest in having localized controversies decided at home,"[4] and (12) "the unfairness of burdening citizens in an unrelated forum with jury duty." *Decker Coal*, 805 F.2d at 843.

First, relative court congestion weighs in favor of transfer to the Middle District of Florida. The Judicial Conference of the United States has recently released its annual report on caseload statistics in the United States Courts. *See* Federal Judicial Caseload Statistics 2018, available at <u>https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2018</u> (visited March 31, 2019). These results have also been summarized in numerous legal publications. *See, e.g.*, These are the Nation's 27 Most Overworked District Courts, available at

[4] This factor is addressed in Section G, *supra*.





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

https://www.law360.com/articles/1139833/these-are-the-nation-s-27-most-overworked-district-courts (visited March 20, 2019). In summary, as this Court is well aware, the federal district courts in the State of California are the second-busiest in the nation on average, with the Central District of California being one of the two most overburdened courts in the state. The Central District of California has a weighted caseload average of 650 cases per judge. What is more, the Courts in this District are further overburdened by the fact that there are still eight (8) vacancies yet to be filled, notwithstanding the fact that the Judicial Conference has recommended that nine (9) to ten (10) additional judgeships be created. While the courts in the Middle District of Florida fare little better, with 637 weighted cases per judge, three (3) vacancies, and six (6) additional recommended judgeships, the fact remains that this district is more overburdened and has no time to consider cases which are better suited to be tried elsewhere, and trial would likely be speedier in another forum.

Finally, courts have universally recognized the unfairness of burdening citizens with jury duty for cases which bear little connection to the forum state. *E.g.*, *Cohen,* 2013 WL 12130019, at *8. Certainly, in a case involving an alleged Florida contract, where three of the four parties are Florida residents, and the majority of witnesses and documentary evidence are housed in Florida, a Florida jury would have a greater interest in the outcome of the controversy. In conclusion, the public interest factors weigh heavily, when taken together, in favor of transfer.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court (a) grant this Motion in its entirety, (b) transfer venue of this action to the United States District Court for the Middle District of Florida, Orlando Division, pursuant to 28

///

///

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

U.S.C. § 1404, (c) award Defendants their costs of suit, and (d) grant any and all further relief as deemed just and proper.

Dated: April 2, 2019

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Michael R. Matthias*
Michael R. Matthias
Joelle A. Berle

*Attorneys for Defendants*
AVENTUS OUTREACH, LLC,
AVENTUS BIO LABS, INC.; and
AVENTUS HEALTH, LLC