JEFFREY AARON COHEN, SBN 186420
LAW OFFICE OF JEFFREY A. COHEN
15338 Central Avenue
Chino CA 91710
Telephone : 310-650-6015
Email: jac@cohen-lawfirm.com

Attorney for plaintiff
NOCHER ENTERPRISES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NOCHER ENTERPRISES, INC., a California corporation,

Plaintiff,

v.

AVENTUS OUTREACH, LLC, a Florida limited liability company; OLIVER DAWOUD, an individual; AVENTUS BIO LABS, INC., a Florida corporation; and AVENTUS HEALTH, LLC, a Florida limited liability company,

Defendants.

Case No.: 2:18-cv-3897 RSWL (JEMx)

Honorable Ronald S.W. Lew

**DECLARATION OF JAMIE NOCHER IN SUPPORT OF OPPOSITION OF NOCHER ENTERPRISES, INC. TO DEFENDANTS MOTION TO TRANSFER VENUE**

Date: May 14, 2019
Time: 10:00 a.m.
Courtroom: TBD

Action Filed: March 5, 2018

I, Jamie Nocher, declare:

1. I have personal knowledge of the facts stated in this declaration, which I submit in support of plaintiff NOCHER ENTERPRISES, INC.'s ("plaintiff" or "Nocher Enterprises") opposition to defendants' motion to transfer venue.

**Parties and Negotiations**

2. I am the principal manager, operator and owner of plaintiff Nocher Enterprises, Inc., a California corporation whose principal place of business is in Playa Del Rey, California. On behalf of plaintiff I and personally engaged with the Aventus Defendants (viz., Aventus Outreach, LLC, Aventus Health, LLC, Aventus Bio Labs, Inc. and Oliver Dawoud, collectively the "Aventus Defendants") with respect to the dealings between the parties that are the subject of this lawsuit.

3. On or about April 19, 2017, the Aventus Defendants invited plaintiff to enroll its accounts with defendants for the sale and service of specimens as ordered by defendants for defendants' laboratories. I am informed and believe that the Aventus Defendants typically avoided conducting business with California entities due to the perceived laws of the state but that defendants made an exception with Nocher Enterprises because of the anticipated large volume of business it expected to generate.

4. It is true that I met with Mr. Oliver Dawoud at the Aventus Defendants' offices in Florida to discuss the terms of our arrangement, but we also discussed our agreement over the telephone as well as through emails and text messaging. Mr. Dawoud, who held himself out as the agent and representative of all Aventus Defendants, told me that the Aventus Defendants are all one and the same entity and operated their business under the banner and trade name of Aventus Biolabs a/k/a AventusBiolabs.com. Mr. Dawoud further informed me that the Aventus Defendants were separately organized according to the type of provider-source and/or payor source, whether it was in-network or out-of-network.

**California-Based Providers of Specimens**

5. At all times during plaintiff's relationship the Aventus Defendants, and specifically with Oliver Dawoud, plaintiff informed defendants, and defendants knew, that the primary and majority source of the specimens that plaintiff would provide, and did provide, were derived from California providers, including but not limited to providers such as hospitals, doctors, and rehabilitation (drug and treatment centers).

6. For example, on or about May 25, 2017, defendants engaged in e-mail communications with plaintiff entitled "CA STATE CLIENTS - SPECIMEN ID ISSUES" and defendants concluded with the statement, "I will be happy to keep you updated if I notice any other issues with respect to CA clients."

7. Indeed, the majority (approximately 85%) of the providers from which plaintiff procured the thousands of samples for the Aventus Defendants were California providers, to-wit, the following entities :

a. Pax House
b. Valley Restoration Center
c. Next Step Recovery
d. South Coast Counseling
e. Landmark Recovery
f. Crossroads Transitional
g. CA Prime Recovery
h. Fresh Start of CA Detox
i. Bridges to Life Detox
j. Forefront Beverly Hills
k. IMAC Medical Group
l. Resilient Care Center
m. Rancho Milagro Recovery
n. New Existence

o. New Origins

p. Pacific Pain Clinic

q. Balboa Surgery Center/Pain Management Inc.

r. Valley Detox

s. Chandler Treatment

t. Playa House; and

u. Seacliff Recovery.

8. The Aventus Defendants, in turn, systematically delivered the necessary supplies and equipment for the samples directly to the California provider-entities as indicated by the medical necessity forms.

**<u>Testing In Jurisdictions Outside of Florida</u>**

9. Between May and August 2017, plaintiff had delivered approximately 11,000 specimens to the Aventus Defendants to the locations they directed. The Aventus Defendants specifically directed plaintiff to deliver a significant portion of specimen samples (at least 2500 specimen samples out of approximately 11,000) t o *<u>jurisdictions outside of Florida</u>*, including the following hospitals and providers in Arkansas, Montana, Mississippi and Missouri:

a. Dewitt Hospital and Nursing Home
CLIA ID: 04D0642180
1641 South Whitehead Dr
De Witt, AR 72042

b. North Oak Regional Medical Center
CLIA ID: 25D0316599
(662) 562-3100
401 Getwell Dr
Senatobia, MS 38668

///

c. Trinity Hospital Nursing Service
CLIA ID: 27D0692133
(406) 653-2100
315 Knapp St
Wolf Point, MT 59201

d. Singing River Hospital
CLIA ID: 25D0319894
(228) 809-2240
2809 Denny Ave
Pascagoula, MS 39567

e. Deckerville Community Hospital
CLIA ID: 23D0372861
(810) 376-2835
3559 Pine St
Deckerville, MI 48427

10. I am also informed that approximately half of the entire sample specimens plaintiff provided to the Aventus Defendants was billed by the Avetnus Defendants through hospitals outside of Florida – who are required to test the specimens at their own laboratories.

**<u>Defendants' Misrepresentations of Fact</u>**

11. Defendants promised to pay plaintiff a reasonable amount of money for plaintiff's provided specimens based on defendants' collections. Defendants promised to pay plaintiff 50% of net payment received (less 30% on hospital fees) and then 50% of the remainder; and from which defendant also deducted $150.00 per paid sample. Defendants promised to account for their collections in the form of, inter alia, summarized reports indicating the amount collected per claim, provider name, and claim date. Defendants also were to provide plaintiff access to defendants' online portal to verify collection and other data. Plaintiff, in reliance on defendants' promises, started delivering the samples to defendants.

12. As of August 2017, the defendants had paid plaintiff one hundred seventy thousand dollars ($170,000.00) for approximately 600 specimens. During that time frame defendants had been stalling plaintiff on further payments, and failed and refused to provide plaintiff the reports of the collections on the specimens. Defendants also denied plaintiff access to defendants' online portal to verify collection information. The denial of access to the portal occurred in California, which is where plaintiff attempted to access the portal.

13. In or around early November 2017 defendants, in response to plaintiff's repeated requests for payment and an accounting, provided plaintiff by e-mail an Excel spreadsheet that was purportedly the amount of collection defendants made on plaintiff's samples for September 2017 (entitled "Nocher Sept").

14. Defendants delivered said email and attached Excel spreadsheet to plaintiff here in California.

15. Upon review plaintiff learned that defendants had falsified the Nocher Sept spreadsheet as defendants' representatives had also simultaneously or nearly simultaneously sent the same spreadsheet (listing the same providers and samples) but bearing differing numerical collection and other data. Upon further inspection plaintiff learned that defendants had materially falsified the amounts collected as zero or nearly zero to justify not paying plaintiff any money for the samples, whereas I am informed that defendants had collected substantial sums of money on the samples plaintiff provided.

16. Specifically and by way of example, throughout the reports identical claim ID numbers and claim dates were listed but have two drastically different reimbursements with no correlation. In some cases a $19,000 payment turned into 0 or $5,000 turned into $500. In addition, based on plaintiff's independent

investigations, there were many payments of twenty-thousand dollars ($20,000.00) gross per specimen paid to defendants that were never accounted for or paid to plaintiff.

17. By that time it was apparent to me that defendants had no intention of paying for the unpaid 10,400 specimens. Defendants also refused to make any further payments based on the false accountings made by defendants.

18. Plaintiff is informed that defendants have collected millions of dollars from the 10,400 specimens plaintiff provided and for which remain unpaid. Whereas, plaintiff has provided and furnished defendants approximately 11,000 specimens for which defendants have paid only for 600 specimens. Since that time defendants have not provided any accounting of the collections on the specimens.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 21, 2019

Jamie Nocher

__*s/JAMIE NOCHER*______________